**Stephen Elmer QUILLIAMS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–86–881.**

Court of Criminal Appeals of Oklahoma.

Sept. 14, 1989.

Jamie D. Pybas, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen. and Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

### OPINION

LANE, Vice Presiding Judge:

Stephen Elmer Quilliams, Appellant, was tried and convicted in the District Court of Canadian County, Case No. CRF–86–58 for Second Degree Murder (21 O.S. 1981, § 701.8). The Honorable Edward C. Cunningham sentenced Appellant to a term of thirty-four (34) years as recommended by the jury. Appellant has perfected his appeal.

On January 20, 1986, Appellant shot Jimmy Lacanne in the hip with a 30.06, high powered, deer rifle. The bullet passed through Lacanne's pelvis and severed at least one major artery. Lacanne died as a result of massive hemorrhage soon after being removed from the crime scene.

Lacanne's shooting was the climax of an altercation between Lacanne and Appellant which began when Lacanne burst into Appellant's home, apparently to continue a dispute in which the two had been involved for some period of time. During the scuffle, Appellant and Lacanne each grabbed the rifle and fought over it until Appellant's roommate took it away from both of them. Soon after, Lacanne left Appellant's house.

Appellant picked up his rifle and followed Lacanne out the front door. As Lacanne neared the roadway, he made some movement which Appellant claimed to perceive as reaching for a knife. Another witness testified that Lacanne pulled his pants up. Appellant responded by admittedly, intentionally shooting Lacanne although he denied an intent to do more than wound Lacanne.

■ As his first assignment of error, Appellant claims that there was insufficient evidence to convict him of Second Degree Murder. His argument is based upon a decision of this Court in a case which did not involve the same form of the second degree murder statute under which Appellant was prosecuted. 21 O.S. 1981, § 701.8. In *Massie v. State*, 553 P.2d 186 (Okl.Cr. 1976), we were concerned with an analysis of the evidence which supported the conclusion under 21 O.S. Supp.1973, § 701.2, that the defendant had acted in a manner that was "imminently dangerous to others." At that time, the pertinent portion of the second degree murder statute read:

Homicide is murder in the second degree in the following cases:

2. When perpetrated by an act imminently dangerous *to others* and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual; ...

(Emphasis added).

We held that the section required evidence of more than one victim or potential victim put at risk by the defendant's actions. This is no longer the law. When the current version of § 701.2, now 21 O.S. 1981, § 701.8, was enacted, the language "to others," was changed to read "to another person," thus eliminating the need for proof of danger to more than one person. The section now reads:

.    .    .    .    .

1. When perpetrated by an act imminently dangerous to *another person* and evincing a depraved mind....

(Emphasis added).

We have examined the evidence as required by *Spuehler v. State*, 709 P.2d 202, 203 (Okl.Cr.1985) and find ample evidence to support a conviction for Second Degree Murder. Appellant intentionally armed himself and intentionally shot Lacanne as he left Appellant's premises. This is sufficient to meet the elements of 21 O.S. 1981, § 701.8. *Dorsey v. State*, 739 P.2d 528, 529 (Okl.Cr.1987).

■ Appellant next claims that the trial court erred when it failed to instruct that a verdict could be reached on the lesser offense of misdemeanor-manslaughter. He

claims that this instruction should have been given because the evidence supports several underlying misdemeanors. We disagree with this contention[1] but most importantly reject the argument because Appellant failed to request the instruction at trial. Assuming the potential for any error exists, it is waived by that failure. *Russell v. State*, 763 P.2d 1180 (Okl.Cr.1988); *Sims v. State*, 731 P.2d 1368, 1371 (Okl.Cr.1987).

■ Appellant's next two contentions concern the admission of rebuttal evidence offered by the State tending to counter his evidence that while he had a general reputation for peacefulness, the victim was known to be prone to violence. Specifically, Appellant challenges the rebuttal testimony which appeared to contradict his own testimony that he had never previously threatened to shoot Lacanne. He also contests the admission of testimony by a drug agent that in her experiences with Appellant, he was often armed with a variety of guns and rifles. Appellant now claims that allowing the prosecution to bring this evidence in during rebuttal improperly interjected collateral matters before the jury, thus, error should result.

We must disagree with Appellant's conclusions. Appellant's major emphasis during his defense was that he was a peaceful person who would not react violently unless he believed his life to be threatened. He presented many witnesses and took the stand on his own behalf in an attempt to establish his general reputation for peacefulness. Evidence rebutting this character testimony is admissible after the subject is opened by a defendant. 12 O.S. 1981, § 2404(A)(1).

■ When Appellant denied having previously threatened Lacanne and denied his propensity to be armed, the prosecutor was free to offer contradictory testimony in rebuttal. Rebuttal evidence "may be offered to explain, repel, disprove, or contradict facts given in evidence by an adverse party, regardless of whether such evidence might have been introduced in the case in chief or whether it is somewhat cumulative." *Hall v. State*, 698 P.2d 33 (Okl.Cr. 1985). The evidence in question is relevant, therefore it was properly offered and admitted to rebut the testimony of Appellant. There is no error here.

■ Appellant next claims that the State failed to prove beyond a reasonable doubt that he was not acting in self defense, and accordingly, his conviction must be reversed. We have reviewed the record and find that sufficient evidence was presented by the State to justify the jurors' verdict which implicitly rejected the defense of justification.

The evidence presented by Appellant which supports his theory of the case largely consisted only of his own testimony. While several witnesses testified that Appellant and Lacanne had fought, the evidence was undisputed that the fighting had ceased and Lacanne had left the premises. Appellant's testimony that Lacanne had turned around, pulled a knife and was returning to the house was uncorroborated by any other evidence. The State elicited testimony from several witnesses that Appellant did not have a knife in his hand, nor did he even appear to be reaching for a knife. Although a knife was given to a police officer as part of Lacanne's personal effects after his death, all the police officers involved at the scene, as well as all of the emergency medical technicians, testified that they did not see the knife. This proof is sufficient to meet the State's burden of proof as defined in OUJI–CR 727, which was given to the jury in this case. At that point, the determination of whether the homicide was justifiable was a factual question solely within the province of the jury. *West v. State*, 617 P.2d 1362, 1366 (Okl.Cr.1980).

The next assignment of error concerns a statement made by the prosecutor in his closing argument. Because Appellant failed to object to the statement at the time it was made, he has waived all but fundamental error. *Plunkett v. State*, 719 P.2d 834 (Okl.Cr.1986); *Tucker v. State*, 620 P.2d 1314 (Okl.Cr.1980). We have reviewed the comment and do not find it to

1. *See White v. State*, 726 P.2d 905, 908 (Okl.Cr. 1986).

**993**

be reversible error. *See Griffith v. State,* 734 P.2d 303 (Okl.Cr.1987).

■ As his final allegation, Appellant claims that his right to a fair trial was impugned by the fact that he was "required" to wear a red "armband." This red "armband," very similar to a hospital bracelet and worn on the wrist, identified Appellant by name and specified the charge against him. Appellant likens his wearing of this bracelet to other instances where defendants have been required to appear in court in a jail uniform, identifying them as a prisoner. At the outset, we note that no objection to the wearing of the bracelet appeared to have been made until after the close of the testimony on the fourth day of a five day trial. Even if we were to find error, that error would be waived by Appellant's unexplained delay in raising the issue. As soon as the matter was brought to the trial court's attention, the bracelet was removed.

■ In any case, Appellant has failed to establish that he was in any way prejudiced by the bracelet. There is no evidence that the bracelet was obvious or even noticeable. Without a showing of prejudice, we will not find error. *Washington v. State,* 568 P.2d 301, 306 (Okl.Cr.1977).

We have considered the allegations of error which have been raised by Appellant. We do not find any error. Accordingly, Appellant's judgment and sentence is hereby AFFIRMED.

PARKS, P.J., and BRETT and LUMPKIN, JJ., concur.