Corey Duane HAMILTON Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–93–1366.

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1997.

Rehearing Denied June 10, 1997.

**1004**

Sid Conway, Assistant Public Defender, Denny Johnson, Assistant Public Defender, Tulsa, for Appellant at trial.

David Moss, Assistant District Attorney, Tulsa, for the State at trial.

Paula J. Alfred, Assistant Public Defender, Tulsa, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General, William L. Humes, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## OPINION

JOHNSON, Judge:

Corey Duane Hamilton, hereinafter referred to as Appellant, was tried and convicted by jury of the crimes of Robbery with a Firearm (Count I) and Murder in the First Degree, Malice Aforethought and Felony

1. Appellant's brother Will Hamilton, who was visiting from Detroit, Michigan, and Tyrone

(Counts II—V) in Case No. CF–92–3584 in the District Court of Tulsa County before the Honorable Jay D. Dalton, District Judge. The jury found four aggravating circumstances as to each victim: (1) Appellant had knowingly created a great risk of death to more than one person; (2) that the murder was especially heinous, atrocious or cruel; (3) that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (4) that Appellant would constitute a continuing threat to society. The trial judge sentenced Appellant in accordance with the jury's recommendation of 500 years imprisonment for Count I and death for Counts II—V. From these judgments and sentences, Appellant has perfected this appeal.

### FACTS

On August 17, 1993, State's witness Gaylon Frazier discovered the bodies of four employees of Lee's Famous Recipe Chicken Restaurant, hereinafter "Lee's." They were found dead in the cooler of the restaurant. Dr. Distefano testified that all four died of close range gun shot wounds to the back of the head. The gun was recovered from a field near the apartment complex where Appellant lived. Co-defendant Donnie Daniels' blue Chevrolet automobile was found parked at the apartment complex where appellant lived.[1]

Lisa Frazier, who resides behind Lee's, testified that she observed a black male drive a blue Chevrolet up and down 9th Street several times. He picked up another black male, wearing a distinctive shirt with a blue seven, who retrieved what appeared to be a shotgun from a ditch. She also observed the male with the blue seven shirt with what appeared to be a shotgun as he walked across the street under the lights. He then proceeded to walk up the wood embankments on the side of Lee's and behind the privacy fence at Lee's.

Another witness, John Andrew Waltrip, testified he saw three black males. The first

Johnson were also co-defendants.

two he saw standing in a field between a car lot and a vacant building. He described them as between 20 and 25 years of age. The first male, wearing all black clothes, went behind the building never to be seen again. The second male, wearing black shorts and a black top with a gold number seven on it, met up with a third male who was wearing a dark top and white "fleece" looking shorts. Waltrip further testified he saw the second male with a long gun to his side and a white bag in his hand. Both men got into a blue Chevrolet, which Waltrip has observed earlier going up and down the street several times.

Denicsha Gunter, Daniels' girlfriend, testified that Daniels was wearing blue cut-off shorts, blue jacket and a black t-shirt on the night in question. Mildred Elaine Mangrum testified that Appellant was wearing a blue Bugle Boy tank top and white shorts with black stripes on them on the night in question.

Daniels, the co-defendant, testified that during the evening hours of August 17, 1993, he, Appellant, Will and Johnson played cards at Gunter's home. Earlier in the day, Daniels and Johnson had obtained a .38 caliber pistol from a relative of Johnson's. They discussed robbing Lee's. Daniels was a former employee of Lee's and was familiar with the closing procedures of the restaurant and with the procedure for opening the restaurant's safe.

After discussing the robbery, the four men went back into Gunter's apartment and changed clothes. The men left at approximately 9:45 p.m., taking Daniels' car, so that they could be at Lee's before 10:00 p.m. when it closed. In addition to the .38 pistol, the men also had a shotgun. Appellant and Daniels knew that both Ted Kindley and Sandy Lara were working at Lee's that night and would recognize them. However, they did nothing to disguise their appearance.

As Appellant and Daniels entered the door of Lee's and were met by Kindley, Appellant pulled the gun and told Kindley to lock the

doors, which he did. The other three Lee's employees, Lara, Gooch, and Williams, were told to go into the walk-in cooler. There, they were made to kneel down. Kindley was up front attempting to open the store safe. Will Hamilton, carrying the shotgun, was guarding the back door. After Appellant got the money from the safe, he placed Kindley in the cooler. Daniels walked out on the loading deck area and, shortly thereafter, heard shots from inside. Daniels walked away from the store and did not return. When the four men met a short time later, Appellant told them that he shot "Ted and Sandy and them."

Other facts will be discussed as pertinent to the relevant propositions of error.

## I. PRETRIAL ISSUES

### A.

Because Appellant's first and seventeenth propositions of error contain a similar issue, they will be considered together. In his first proposition of error, Appellant asserts that the trial court's application of Article II, § 20,[2] of the Oklahoma Constitution in this case violated due process, equal protection, right to counsel and the ban on cruel and unusual punishment.

■ The record reveals that at 5:00 p.m. on November 10, 1993, Appellant was given oral and written notice that any or all of the co-defendants might be called as a witness. Thursday, November 11, 1993, was Veterans Day, a legal holiday. Trial commenced on Monday, November 15. Thus, Appellant argues that he was given one working day's notice that any or all co-defendants *might* testify. Defense counsel informed the trial court that when she learned from an article in the local Saturday newspaper that Daniels would actually testify, she prepared a motion for continuance which was argued on the morning of trial. It was at this time that she learned from the State that Daniels would actually testify. The trial court denied Ap-

**2.** Article II, § 20 provides in part, that "in capital cases, at least two days before the case is called for trial, he [the accused] shall be furnished with a list of the witnesses that will be

called in chief, to prove the allegations of the indictment or information, together with their postoffice addresses."

pellant's motion for a continuance reasoning that while the State failed to comply with the *Allen v. District Court*, 803 P.2d 1164 (Okl. Cr.1990) order, it did comply with Article II, § 20. Additionally, the trial court noted that Daniels would be the State's last witness, thus giving Appellant opportunity to interview him.

However, Appellant argues that he was forced into trial without complete discovery of Daniels' testimony and without time to modify jury selection, cross-examination,[3] closing arguments, or his decision as to whether to testify, i.e. his whole trial strategy. With Daniels' testimony, the case against Appellant was changed from a totally circumstantial evidence case to a direct evidence case. In addition, defense counsel's prepared mitigation, which had been furnished to the State, had become a powerful tool for the State in its argument for the death penalty. See Prosecutorial Misconduct, No. 6, *infra.* Additionally, defense counsel was not given permission to interview Daniels until the third day of trial. Daniels testified on the fourth day.

Appellant concedes that his preparation for Daniels' testimony included a "two-hour video, a seventy (70) page transcription of his [Daniels'] statement to the police, and a forty (40) page transcription of the testimony at his [Daniels'] trial." We note that Appellant had nine (9) days from November 10, 1993, to prepare for Daniels' testimony. Defense counsel must have been aware that a co-defendant could testify due to a plea bargain. This often happens just before trial and the attorney must be prepared. Thus, we find Appellant had adequate time to prepare for Daniels' testimony. *See* Article II, § 20. We also find no abuse of discretion in the trial court's denial of a continuance. This proposition is denied.

In light of the foregoing, we find no merit in proposition seventeen wherein Appellant argues that the failure to give notice of a critical witness [Daniels] denied him the opportunity to investigate Daniels and to revise his trial strategy to meet the surprise testimony of Daniels.

### B.

■ Appellant argues in proposition seven that because the Information failed to allege the essential elements of the underlying felony, Robbery with a Firearm, in Felony Murder Counts II—V, the trial court was without subject matter jurisdiction.

■ This issue was recently addressed by this Court in *Parker v. State*, 917 P.2d 980 (Okl.Cr.1996), where we held that "any failure to allege facts constituting the offense raises due process questions but does not affect the trial court's jurisdiction." *Id.* at 985. We further held that "a trial court's jurisdiction is triggered by the filing of an Information alleging the commission of a public offense with appropriate venue." *Id.* Thus, a due process violation due to insufficiency of the Information does not necessarily mean that jurisdiction was not conferred. In the instant case, the trial court did have jurisdiction. This proposition is without merit.

### II. FIRST STAGE ISSUES

#### A.

In his fourth proposition of error, Appellant claims that the trial court committed reversible error when, over his objection, flight instructions were given. Appellant argues that this Court's holding in *Rivers v. State*, 889 P.2d 288 (Okl.Cr.1994) making our holding in *Mitchell v. State*, 876 P.2d 682 (Okl.Cr.1993) prospective only is erroneous. Appellant reasons that this Court's finding in *Mitchell* that the flight instruction in question assumes the defendant committed the crime, in effect, found that the flight instruction presumed the defendant guilty. Thus, appellant argues that he was deprived of the following constitutional or statutory rights:

---

**3.** Defense counsel made an offer of proof that she would have interviewed inmates in the various institutions where Daniels had been incarcerated; obtained prison, jail, and probation records; explored Daniels conduct and propensity for violence; and interviewed probation officers and others acquainted with Daniels.

### 1. Statutory Presumption of Innocence

■ Appellant asserts that his due process right to a fair trial was violated because the instruction, by assuming that he committed the crime, took away his presumption of innocence. He relies on *Flores v. State*, 896 P.2d 558 (Okl.Cr.1995) where we held the presumption of innocence to be a fundamental statutory right guaranteed to every criminal defendant. *See* 22 O.S.1991, § 836. We do not agree with Appellant's premise that because the instruction "assumes the defendant to have committed the alleged crime," that the instruction presumes the defendant guilty of committing the alleged crime. Therefore, we do not find *Flores* applicable. Additionally, we note that the jury was given specific instructions regarding the presumption of innocence.

This Court has made clear that *Mitchell* is prospective in application. *Cooper v. State*, 889 P.2d 293, 310 (Okl.Cr.1995) *overruled on other grounds*, —— U.S. ——, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); *Spears v. State*, 900 P.2d 431, 446 (Okl.Cr.1995) *cert. denied*, —— U.S. ——, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995); *Rivers v. State*, 889 P.2d at 292. Appellant's trial was conducted prior to our ruling in *Mitchell*. Thus, we will determine if the flight instruction given in this case was proper under the standard used prior to *Mitchell*. Specifically, we must determine whether, when viewed in the context of the other evidence, the evidence of Appellant's alleged flight tends to establish guilt.

■ In this case, the pivotal question is whether Appellant was one of the men who committed the robbery and took part in the murders. Evidence was presented that Appellant was one of the four men who planned and carried out the robbery. Evidence was also presented as to the clothing Appellant wore during the commission of the robbery and murders. There was also evidence that Appellant met the co-defendants to divide the stolen money. Further, the murder weapon was found near Appellant's apartment complex and a search of his van led to the discovery of a box of 12-gauge shotgun shells, a Lee's jacket, and a Tulsa World newspaper article about the murders. The evidence also revealed that Appellant and Will left Tulsa on the night of the murders without retrieving their belongings. The brothers traveled to Detroit, Michigan, where they were ultimately found. We find that, when viewed in the context of the other evidence, the evidence of Appellant's alleged flight tends to establish guilt. Thus, the flight instruction was properly given under *Farrar v. State*, 505 P.2d 1355, 1360–61 (Okl. Cr.1973). This contention is without merit.

### 2. Sixth Amendment Right to Trial by Jury

Appellant contends that his right to a trial by jury was violated because the flight instruction directed the jury to presume Appellant committed the crimes charged and by so doing precluded the jury from making an independent factual determination of each element of the offenses charged. Based on our determination in No. 1 above, this contention is moot.

### 3. Right to Testify

■ Appellant argues that the flight instruction is analogous to denying him the right to testify. He relies on *Rock v. Arkansas*, 483 U.S. 44, 52–53, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37, 46–47 (1987), where the Supreme Court held the right to testify "is essential to due process in a fair adversary process" and "the choice of whether to testify in one's own defense is an exercise of the constitutional privilege." Thus, where the flight instruction is given, without prior notice, after the close of the case, the State **per se** impermissibly infringed on his constitutional right to testify. We are not persuaded by Appellant's argument. Additionally, Appellant has offered no authority to support his contention. This Court has consistently held that where there is no case authority to support an argument and it is apparent that the appellant has not been deprived of any fundamental rights, we will not do the attorney's work nor search the books for authorities. *See Wilson v. State*, 737 P.2d 1197, 1204 (Okl.Cr.1987). This contention is denied.

#### 4. Sixth Amendment Right to Counsel

■ To support his claim that he was denied his Sixth Amendment right to counsel, Appellant relies on this Court's finding in *Mitchell:* "Throughout the history of the judicial development of our law on flight instructions as it pertains to departure, we have required that the defendant offer evidence in explanation of such conduct." Thus, Appellant asserts that based on this finding, he did not plan to testify at trial and defense counsel could not have foreseen that the trial court would give the flight instruction where Appellant did not testify or otherwise offer evidence in explanation of flight. Appellant also argues that because the flight instruction was given after the close of the case and the opportunity to testify or to otherwise controvert flight evidence had passed, he was denied the effective assistance of counsel.

First, we are at a loss as to how defense counsel could rely on our holding in *Mitchell* when *Mitchell* was decided after Appellant's trial. Second, Appellant has failed to show this Court how he was denied his right to counsel. Third, we are not persuaded by counsel's argument about ineffective assistance of counsel. Fourth, counsel offers no authority to support her contention. This Court has consistently held that where there is no case authority to support an argument and it is apparent that the appellant has not been deprived of any fundamental rights, we will not search the books for authorities. *See Wilson,* 737 P.2d at 1204. This contention is denied.

#### 5. Right to be Free of Cruel and Unusual Punishment

Appellant contends that because the flight instruction (1) stripped him of the presumption of innocence and (2) relieved the State of its burden of proof of proving each element of the crime beyond a reasonable doubt, the sentencing stage was tainted and unreliable under *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Having found no merit in any of the foregoing, this contention is moot. This proposition of error is denied.

#### B.

In his eighth proposition of error, Appellant claims the part of OUJI–CR 82, which reads, **"you may not consider this impeachment evidence as proof of innocence or guilt[,]"** improperly instructed the jury it could not consider the impeachment evidence as substantive evidence of guilt. Impeachment evidence was offered against State's witnesses, Gunter and Daniels. Appellant claims the State could not prove either the fact or extent of his involvement in the crimes apart from their testimony. Both witnesses admitted they lied under oath, Gunter at preliminary hearing and Daniels at his trial.

In our recent decision in *Omalza v. State,* 911 P.2d 286 (Okl.Cr.1995), this Court addressed the use of impeachment evidence in the form of inconsistent statements for substantive purposes. We expressly held that inconsistent statements which meet the requirements of 12 O.S.1991, § 2801(4)(a)(1), may be considered as substantive evidence. *Id.* at 300. Additionally, we held that inconsistent statements made to police whether sworn or unsworn do not meet the requirements of § 2801(4)(a)(1) because the statements are not made during any trial, hearing, deposition or proceeding. Thus, the statements can only be used for impeachment purposes. *Id.* at 302.

■ In this case, Gunter's inconsistent statements made at preliminary hearing and Daniels' inconsistent statements made during his trial can be used for substantive purposes. Any inconsistent statements made by them to police officers could be used for impeachment purposes only. Thus, the jury should have been instructed that any sworn inconsistent statements made during any trial, hearing, deposition or proceeding could be used as substantive evidence. However, in light of the overwhelming uncontradicted evidence of guilt we find the error harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

#### C.

■ In his ninth proposition of error, Appellant asks this Court to reverse his con-

viction for Robbery with a Firearm with directions to dismiss because the felony murder theory under which he was convicted was based on the underlying felony of Robbery With a Firearm. *See Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). In this case, Appellant was found guilty under both the felony murder theory and the malice aforethought theory. Appellant cites *Hain v. State*, 852 P.2d 744, 752 (Okl.Cr.1993) *cert. denied*, 511 U.S. 1020, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994) and *Castro v. State*, 745 P.2d 394, 405 (Okl.Cr.1987) *cert. denied*, 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988) in support of his position that where alternative theories are charged, the verdict must be interpreted as one of felony murder in order for a defendant to receive the benefit of the rule precluding conviction of a lesser crime necessary to prove the greater crime.

The State is correct in pointing out that in *Hain* the jury did not indicate under which of the two theories it based its guilty verdict. However, in *Hain*, this Court relied on the following language in *Munson v. State*, 758 P.2d 324, 332 (Okl.Cr.1988) *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989):

> Nonetheless, because the jury's verdict does not specify whether appellant was found guilty of malice-aforethought murder or kidnapping murder or armed-robbery murder, the verdict must be interpreted as one of felony murder in order that appellant receive the benefit of the rule that a defendant cannot be convicted of felony-murder and the underlying felony.

Thus, because the purpose of the rule is for the benefit of the defendant, Appellant's conviction for Robbery With a Firearm is **REVERSED** and **REMANDED** with instructions to **DISMISS**.

### D.

Tenth, Appellant asks this Court to reverse his conviction or in the alternative remand this case for an evidentiary hearing because the trial court failed to conduct an inquiry to determine the facts alleged in his motion for substitute counsel at the end of the first stage of trial. Appellant alleged (1) that he had been denied effective representation in the first stage, (2) that the Chief Public Defender had changed his view on capital punishment, (3) that news coverage had denied him a fair trial, and (4) that the trial judge's son, employed by the Tulsa County Public Defender's office, had compromised his representation by aiding the State. The trial judge summarily overruled Appellant's motion.

First, Appellant's reliance on *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) is misplaced. In that case, the Supreme Court held the failure to conduct inquiry to ascertain the risks in conflicted representation was reversible error. We find no such issue here. Second, Appellant has failed to develop his argument beyond bald assertions. This Court has consistently held "[w]here [there is no case authority to support an argument], and it is apparent that the appellant has not been deprived of any fundamental rights, we will not search the books for authorities to support mere assertions that the trial court erred." *Wilson*, 737 P.2d at 1204. This argument is without merit.

### III. PROSECUTORIAL MISCONDUCT

In his eleventh proposition of error, Appellant asks this Court to reverse his convictions for the following comments which constituted prosecutorial misconduct:

#### 1. "Cloak of Innocence"

In his closing argument, the prosecutor on two occasions told the jury:

a. "When we started with this case, the defendant was presumed to be not guilty. You said you could do that. This evidence now strips the cloak of innocence from him."

b. "Have we proved what we said we could prove? Yes. I submit to you, as I said a few minutes ago, the cloak of innocence is stripped away."

Appellant asserts that these statements in effect told the jury there was no presumption of innocence to take with them in deliberations. Appellant relies on *Miller v. State*,

**1010**

843 P.2d 389 (Okl.Cr.1992) where we considered a nearly identical comment.[4] We held that the comment amounted to an unconstitutional restatement of the presumption of innocence. *Id.* at 390. Additionally, we found that the error went to the very fundamental principle of jurisprudence. *Id.* We reversed and remanded the case for a new trial. However, in light of the overwhelming uncontradicted evidence of guilt in this case, we find the error harmless beyond a reasonable doubt. *See Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710. Additionally, we note that the jury was given specific instructions regarding the presumption of innocence. This contention is denied.

### 2. "Reverse *Caldwell* Error"

■ In his closing argument, the prosecutor told the jury three times that he asked and tried as hard as he could to get the jury in Donnie Daniels' case to give him the death penalty, but the jury took pity on him whether they should have or not. Appellant claims these comments call the jury to a heightened and broader sense of responsibility to return death verdicts because a previous jury did not render death verdicts in Donnie Daniels' case despite his best efforts. This created a "reverse *Caldwell*[5] error." We note that Appellant raised no objection to the first two remarks and raised only a general objection to the third. Therefore, he has waived all but plain error. *Hunt v. State,* 793 P.2d 1366, 1368 (Okl.Cr.1990); *Quilliams v. State,* 779 P.2d 990, 992 (Okl.Cr.1989); *Harris v. State,* 777 P.2d 1359, 1362 (Okl.Cr.1989). We find no plain error.

### 3. Right to Remain Silent

■ In his closing argument, the prosecutor posed the rhetorical question: "What is the explanation for calling someone to take you across the street?" Appellant asserts that this question was a comment on his right to remain silent. We note that Appellant raised no objection to this remark. Therefore, he has waived all but plain error. *Hunt,* 793 P.2d at 1368; *Quilliams,* 779 P.2d at 992; *Harris,* 777 P.2d at 1362. We find no plain error. However, we find that this statement was not a comment on Appellant's right to remain silent.

### 4. Duty to Impose Death

■ In his closing argument, the prosecutor made the following comments to the jury:

a. "I think I could and I think I could support it [the death penalty]. Based upon the moral standards and the history of this country, we have debated that and decided that it is morally permissible for a jury to make that decision."

b. "Counsel, on the one hand, wants mercy for her client, yet has a hard time choking out the words that justice in any form is appropriate. You don't need mercy if you're not guilty. If you don't need justice, there's no need to grant mercy."

Appellant, relying on *Lalli v. State,* 870 P.2d 175, 178 (Okl.Cr.1994), suggests that these arguments convey to the jury that their only moral course was to impose the death penalty. We do not agree. We find the comments to be proper argument.

### 5. Mitigation into Aggravation

■ Appellant submits that it was prejudicial for the prosecutor to turn mitigation evidence into aggravation. He claims that the prosecutor, by negatively commenting on his mitigating evidence, effectively told the jury to disregard the mitigating evidence. Thus, the jury was denied the opportunity to consider and give effect to his mitigating

---

**4.** The comment was as follows: "Ladies and gentlemen, the defendant stands guilty as charged and the cloak of innocence that he wore, and he did indeed by our law wear it, when you heard the evidence, the evidence is all through now. The dust is settled, a term I used earlier, and that cloak is gone. It's been ripped away from him by the testimony of three men—four men, actually. He stands guilty as charged."

**5.** *Caldwell v. Mississippi,* 472 U.S. 320, 327–29, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985) (holding it error to diminish the jury's responsibility for determining the appropriateness of a death sentence by informing the jury that the appropriateness of the death sentence rested not with the jury but with the appellate court who will automatically review the sentence.)

evidence. Appellant relies on *Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989) where the Supreme Court, citing *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), held: "[I]t is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing sentence." Appellant's reliance on *Penry* is misplaced. In the case at bar, unlike *Penry*, the jury was properly instructed as to mitigating evidence. This proposition of error is denied.

## IV. SECOND STAGE TRIAL ISSUES

### A.

In his second proposition of error, Appellant attacks the use of victim impact evidence in Oklahoma. He concedes that this Court's recent decision in *Cargle v. Oklahoma*, 909 P.2d 806, 824–30 (Okl.Cr.1995) *cert. denied*, —— U.S. ——, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996) has set forth the only permissible use of victim impact evidence in Oklahoma. Appellant points out that in *Cargle*, this Court found error in the amount and type of victim impact evidence presented to the jury. This Court held the error to be a classic trial error since it occurred during the presentation of the case to the jury and could be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.

Here, Appellant challenges not the amount and type of victim impact evidence, but the jury's potential misuse of that evidence in the absence of instructions setting forth its appropriate use. Thus, Appellant contends this error is not mere trial error occurring during the presentation of the case to the jury, as in *Cargle*, but rather "structural" error as recognized in *Sullivan v. Louisiana*, 508 U.S. 275, 278–79, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).

■■■ This Court in *Bartell v. State*, 881 P.2d 92, 98–99 (Okl.Cr.1994), held that a structural error affects the framework within which the trial proceeds, while trial error is an error in the trial process itself. As such,

a trial error is subject to harmless-error standards. We find that any failure to instruct on victim impact evidence does not affect the entire conduct of the trial from beginning to end. Thus, if it is trial error, it would be subject to harmless-error analysis. In this case, the fact that the jury found four aggravating circumstances is sufficient to find the error harmless beyond a reasonable doubt. This proposition, as well as Appellant's claim of ineffective assistance of trial counsel for failure to request such an instruction, is denied.

### B.

Appellant's third proposition of error challenges the jury instruction on the weighing of aggravating and mitigating circumstances. Appellant compares the statutory language in 21 O.S.1991, § 701.11, with Jury Instruction No. 7. Appellant contends the instruction directs the jury to weigh mitigating factors found against the **aggregate** of the aggravators, whereas § 701.11 requires the jury to weigh the aggregate mitigating circumstances found against **each** individual aggravating **circumstance** found.

■■■ This Court declines to construe § 701.11 in the manner requested by Appellant. We have repeatedly held that we will not establish specific standards for the balancing of aggravating and mitigating circumstances. *See Duckett v. State*, 919 P.2d 7, 23 (Okl.Cr.1995) and cases cited therein. In the instant case, the instructions clearly state that an "aggravating **circumstance** or **circumstances** [must] out weigh (sic) the findings of one or more mitigating circumstances." Thus, the jury was adequately informed that aggravators must outweigh mitigators in order for the death penalty to be imposed. This proposition, as well as Appellant's argument that defense counsel was ineffective for failing to object or submit alternative instructions, is without merit.

### C.

■■■ In his fifth proposition of error, Appellant asserts that the trial court violated his due process and Eighth Amendment rights by not allowing him to present evi-

dence on the meaning of life without parole to rebut the continuing threat aggravator. The trial court sustained the State's objection to calling Steve Strode, Administrator, Oklahoma Department of Corrections, to testify that life without parole in Oklahoma means a defendant would serve his natural life in a maximum security prison. Appellant relies on *Simmons v. South Carolina*, 512 U.S. 154, 171, 114 S.Ct. 2187, 2198, 129 L.Ed.2d 133 (1994) which held that the State may not "create a false dilemma by advancing generalized arguments regarding the defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant never will be released on parole." However, this Court distinguished *Simmons* in *Trice v. State* 912 P.2d 349, 352 (Okl.Cr.1996) and held that it was not error to not define life without parole. Thus, this proposition is meritless.

### D.

In proposition six, Appellant asserts that his convictions for both malice murder and felony murder were used by the state as nonstatutory aggravators violating his Fourteenth and Eighth Amendment rights. Appellant offers no direct case authority in support of this contention, instead making mere bald assertions. "An appellant must support his allegations of error by both argument and citation of authority." *Wilson*, 737 P.2d at 1204. "Where this is not done, and it is apparent that the appellant has not been deprived of any fundamental rights, we will not search the books for authorities to support mere assertions that the trial court erred." *Id.* Thus, this proposition is without merit.

### E.

 In his twelfth proposition of error, Appellant contends that the aggravator, heinous, atrocious, or cruel must fail as a matter of constitutional law because the jury was not instructed on mental torture. In *Rogers v. State*, 890 P.2d 959, 977 (Okl.Cr.) *cert. denied*, — U.S. ——, 116 S.Ct. 312, 133 L.Ed.2d 215 (1995), this Court held that "a victim must be conscious in order to suffer torture or serious physical abuse, but this is

not a separate element on which the jury must be instructed." Thus, the trial court was not required to give an instruction on mental torture. We find no merit in this proposition.

### F.

 Appellant in his thirteenth proposition argues that the aggravator "continuing threat" is unconstitutional as applied in Oklahoma. This Court has repeatedly rejected this argument and we are not persuaded to alter our prior position, notwithstanding *Williamson v. Reynolds*, 904 F.Supp. 1529 (E.D.Okl.1995). *See Cooper*, 889 P.2d at 315; *Malone v. State*, 876 P.2d 707, 715–16 (Okl. Cr.1994) and cases cited therein; *Walker v. State*, 887 P.2d 301, 320 (Okl.Cr.1994), *cert. denied*, — U.S. ——, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995). Appellant's proposition is without merit.

### G.

In proposition fourteen, Appellant contends that aggravators heinous, atrocious, or cruel; knowingly creating a great risk- of death to more than one person; and, killing in order to avoid prosecution are violative of both federal and state constitutions as they are vague and overbroad. This Court has reviewed and rejected these arguments previously. For cases addressing the unconstitutionality of the heinous, atrocious, or cruel aggravator, *see Cooper*, 889 P.2d at 313; *Nuckols v. State*, 805 P.2d 672, 674 (Okl.Cr.), *cert. denied*, 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727 (1991). For cases addressing the unconstitutionality of knowingly creating a great risk of death to more than one person, *see Malone*, 876 P.2d at 716; *Cartwright v. State*, 695 P.2d 548 (Okl.Cr.1985); *Cartwright v. Maynard*, 802 F.2d 1203 (10th Cir. 1986), *on rehearing*, 822 F.2d 1477 (10th Cir.1987), *affirmed*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

Appellant's argument regarding the issue of the unconstitutionality of the killing in order to avoid prosecution aggravator was presented in *Cooper*, 889 P.2d at 314. In *Cooper*, finding that because the appellant's contention was not supported with relevant

argument and authority, we did not address it. In this case, we also find that Appellant did not support this contention with **relevant** argument and authority. Therefore, we will not address it. *Id.* at 314. As in *Cooper,* we note the Oklahoma death penalty statutes have been held previously to be constitutional. *Id.* This proposition of error must fail.

### H.

In his fifteenth proposition of error, Appellant argues that there is a likelihood that the submitted jury instructions led the jury to believe that mitigation findings had to be unanimous to be considered in the weighing process. This argument was addressed and rejected in *Romano v. State,* 909 P.2d 92, 123 (Okl.Cr.1995) *cert. denied* —— U.S. ——, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996). Thus, this proposition is without merit.

### I.

In his sixteenth proposition of error, Appellant claims it was error for the trial court to give an anti-sympathy instruction because the instruction vitiated consideration of mitigation. We reject this argument as we have on numerous occasions. *See Romano v. State,* 847 P.2d 368 (Okl.Cr.1993) *aff'd* 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994); *Fox v. State,* 779 P.2d 562, 574 (Okl.Cr.1989), *cert. denied* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Woodruff v. State,* 846 P.2d 1124, 1149–50 (Okl.Cr.), *cert. denied,* 510 U.S. 934, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993); *Clayton v. State,* 840 P.2d 18, 34 (Okl.Cr.1992), *cert. denied,* 507 U.S. 1008, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993); *Boyd v. State,* 839 P.2d 1363, 1372 (Okl.Cr.1992) *cert. denied,* 509 U.S. 908, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993).

### J.

In his eighteenth proposition of error, Appellant asserts that the evidence used to support the aggravating circumstances in this case is insufficient as a matter of law because the aggravators are unconstitutional. This contention has been addressed in propositions five, seven, thirteen, and fourteen, *supra,* and is without merit.

### K.

In proposition twenty, Appellant asks this Court to find that the cumulative error in this case requires reversal. We found reversible error in proposition nine which resulted in the Robbery with a Firearm charge being remanded to the District Court with instructions to dismiss. However, in as much as we found all other errors to be harmless beyond a reasonable doubt, we find no cumulative error requiring reversal. This proposition is denied.

## V. POST TRIAL ISSUE

In his nineteenth proposition of error, Appellant itemizes seventeen (17) additional "non-frivolous" issues which were not presented because he was denied a page extension of sixty-five pages in which to present said issues. Appellant asserts that he was in effect denied access to this Court "where the failure to raise critical issues may result in procedural default and result in the affirmation of death sentences despite valid issues." We have considered the cases relied on by Appellant and find none support his argument. The word "Brief" should mean that. If the rules would allow more pages, the defense would ask for even more. There must be a limit and this Court is more than reasonable. This proposition is denied.

## VI. MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.1991, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of aggravating circumstances as enumerated in 21 O.S. 1991, § 701.12. We shall first determine whether the evidence was sufficient to support the imposition of the death penalty.

The jury found the following aggravators:

1. The defendant knowingly created a great risk of death to more than one person;

2. The murder was especially heinous, atrocious, or cruel;

3. The murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and

4. The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

In reviewing the evidence presented by the State, we find that the defendant knowingly created a great risk of death to more than one person by committing an armed robbery in an establishment with several employees. We find that the murder was especially heinous, atrocious, or cruel, in that the employees were forced to kneel in the back room cooler uncertain of their fate, while each but the first listened to his co-workers being killed. We find that the murder was committed for the purpose of avoiding lawful arrest or prosecution as the defendant entered the establishment knowing he would be recognized by some of the workers and thus would be identifiable to police. We further find that the callous nature of the crime, and the Appellant's blatant disregard for the importance of human life render him a continuing threat to society. The evidence substantially supports the finding of the four aggravators. It should be noted that the Appellant knew some of the workers and the location. He did not use any cover-up; he intended to kill.

As mitigation, Appellant offered:

1. That Corey Hamilton is 24 years old;

2. That he has a family who loves him and would be severely impacted if he was put to death;

3. It is the defendant's contention that Corey Hamilton was not the shooter;

4. That Corey Duane Hamilton's family, educational and spiritual backgrounds are inconsistent with one who would shoot four people in the manner described by the evidence;

5. That Corey Duane Hamilton's psychological profile is inconsistent with one

who would shoot four people in the manner described by the evidence;

6. That Corey Duane Hamilton has no history of violence;

7. That Corey Duane Hamilton is the type of person who poses no threat of violence if incarcerated for life;

8. That Corey Duane Hamilton turned himself in, in Detroit, Michigan, after learning that there was an outstanding warrant for his arrest;

9. That neither Donnie Eugene Daniels nor Tyrone Johnson received a death sentence by the jury.

Upon carefully considering and reviewing the evidence which supports the aggravating circumstances, as well as the evidence which may be considered mitigating, this Court finds the sentence of death was factually substantiated and appropriate. Furthermore, we find that the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor. Finding no error warranting reversal or modification, the Judgments and Sentences are **AFFIRMED, EXCEPT** that the judgment and sentence for Robbery with a Firearm is **REVERSED** and **REMANDED** to the District Court with instructions to **DISMISS.**

STRUBHAR, V.P.J., concurs.

CHAPEL, P.J., and LUMPKIN and LANE, JJ., concur in result.

LANE, Judge, concurs in result.

In keeping with my special vote in *Parker v. State*, 917 P.2d 980 (Okl.Cr.1996), I would find that the Information was sufficient on its face and therefore, *Parker* does not apply.