2011 OK CR 1

Danny R. DAWKINS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–2009–293.

Court of Criminal Appeals of Oklahoma.

Jan. 5, 2011.

Jerry Colclazier, Lloyd Palmer, Attorneys at Law, Seminole, OK, counsel for defendant at trial.

Linda Evans, Assistant District Attorney, Holdenville, OK, counsel for state at trial.

Kathleen M. Smith, Appellant Defense Counsel, Norman, OK, counsel for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Stephanie D. Jackson, Assis-tant Attorney General, Oklahoma City, OK, counsel for appellee on appeal.

## OPINION

SMITH, Judge.

¶ 1 Danny Ray Dawkins was tried by jury and convicted of Count I, First Degree Manslaughter in violation of 21 O.S. § 711,[1] and Count II, Unlawful Possession of a Sawed-Off Shotgun, in violation of 21 O.S.2001, § 1289.18, after former conviction of a felony, in the District Court of Hughes County, Case No. CF–2008–20. In accordance with the jury's recommendation the Honorable Timothy L. Olsen sentenced Dawkins to twenty (20) years imprisonment (Count I), and five (5) years imprisonment (Count II), the sentences to run concurrently. Dawkins must serve 85% of his sentence on Count I before becoming eligible for parole consideration. From these judgments and sentences, Appellant appeals.

¶ 2 Dawkins raises seven propositions of error in support of his appeal:

I. Appellant had an absolute right to use lethal force to repel an unlawful intruder. Therefore, he is immune from prosecution and his conviction for manslaughter, in violation of his legal rights, must be vacated and dismissed.

II. The instruction on section 1289.25 was inaccurate and confusing and did not properly convey the law to the jury.

III. Irrelevant instructions, coupled with the prosecutor's misleading argument, erroneously conveyed to the jury that Dawkins was not legally entitled to act in self defense, violating the Fourteenth Amendment to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.

IV. Evidence of flight was never contested by the defendant rendering the flight instruction a violation of Dawkins' fundamental presumption of innocence.

V. Prosecutorial misconduct deprived Dawkins of a fair trial.

---

1. This was a lesser included offense of the charged crime, First Degree Murder. Dawkins was acquitted of that charge.

VI. Dawkins was deprived of the effective assistance of counsel in violation of the sixth and fourteenth Amendments to the United States Constitution and Article II, Sections 7 and 20 of the Oklahoma Constitution.

VII. The accumulation of error in this case deprived Dawkins of due process of law and necessitates reversal pursuant to the Fourteenth Amendment to the United States Constitution and Article II, section 7 of the Oklahoma Constitution.

¶ 3 After thorough consideration of the entire record before us on appeal, including the original record, transcripts, exhibits and briefs, we find that neither reversal nor modification are required by the law and evidence.

¶ 4 Just after midnight on February 6, 2008, Dawkins fatally shot Brandon Sanford in the chest with Dawkins's sawed-off shotgun. Sanford had been in an abusive relationship with 19–year–old Shonna Jennings. Shonna lived with her older sister Summer in Holdenville. On February 5, Sanford came to their house, got in a fight with Shonna, and knocked her to the ground. He left, got drunk, and eventually returned to Shonna's house around midnight.

¶ 5 Dawkins had never met Sanford but Shonna had told Dawkins about him. After Sanford left on the night of February 5, Dawkins and his friend James Bradley picked up the girls. They drove to Seminole, stopping at Holdenville Lake. Dawkins usually carried a sawed-off shotgun, and he, Bradley and Shonna fired the gun while they were at the lake. They returned to the girls' house. Bradley sat on the couch and Dawkins went outside. Sanford drove up and immediately walked in the house uninvited. Dawkins got his sawed-off shotgun from his car. Sanford spoke to Shonna briefly but was distracted when he saw Bradley on the couch. Asking if Bradley wanted to start something, Sanford began to hit Bradley. Summer and Shonna yelled at Sanford to stop. As Sanford attacked Bradley, Dawkins stepped inside the front door. Sanford turned to look at him. Dawkins raised the gun and shot Sanford once in the chest. Dawkins admitted shooting Sanford but told police it was an accident. Arguing that San-

ford was leaving Bradley and coming for him, he claimed self-defense at trial.

▮ ¶ 6 Dawkins claims in Proposition I that his prosecution was barred by the "stand your ground" law. Oklahoma statutes provide that a person has the right to expect absolute safety in a place they have a right to be, and may use deadly force to repel an unlawful intruder. 21 O.S. Supp.2006. § 1289.25. A person who has a reasonable fear of imminent death or great bodily harm to himself or another may use defensive force including deadly force. The person against whom the force is used must commit an unlawful and forcible entry or act which prompts the use of deadly force. 21 O.S.Supp.2006, § 1289.25(B). A person may use deadly force with no duty to retreat when he has the lawful right to be where he is, and when he reasonably believes the use of deadly force is necessary. 21 O.S.Supp. 2006. § 1289.25(D). A person whose use of force is justified according to the statute is immune from criminal prosecution and civil action. 21 O.S.Supp.2006. § 1289.25(F).

▮ Dawkins has claimed throughout the proceedings that this statute applies to him and he should not have been prosecuted. The State responds that the statute does not apply to Dawkins. The State is correct. The statute twice explicitly states that, for a person to be justified in using deadly force, the person must not be "engaged in an unlawful activity". 21 O.S.Supp.2006. § 1289.25(C)(3), (D). Dawkins had an illegally modified weapon—his sawed-off shotgun— and used it to shoot Sanford. At the time he used deadly force, he was engaged in an unlawful act, and he does not get the benefit of the statute.

▮ ¶ 8 When construing statutory language, we must attempt to give effect to the Legislature's intention as expressed in the statute. *State v. Anderson,* 1998 OK CR 67, ¶ 3, 972 P.2d 32, 33. As a statute's text puts citizens on notice of prohibited conduct, the plain language of the text should guide our interpretation. *Anderson,* 1998 OK CR 67, ¶ 3, 972 P.2d at 33. "If the Legislature designs a statute for a specific situation, we should give effect to that intent." *King v.*

*State,* 2008 OK CR 13, ¶ 7, 182 P.3d 842, 844. Dawkins admits that he was in possession of an illegal weapon at the time of the crime. He argues that the plain language of the statute is not sufficient to encompass the Legislature's intent regarding the stand your ground law. Dawkins asks this Court to read into the statute a nexus requirement between the unlawful act and the use of deadly force. He suggests that, under such a reading, the type of weapon he used had nothing to do with his use of deadly force and there is no nexus between his unlawful act (possession of an illegal weapon) and the crime. He argues that the Legislature cannot have intended otherwise law-abiding citizens to be denied the absolute right of self-defense in their homes just because they might be guilty of some "hyper-technical legal violation" such as illegal parking or possession of an illegal weapon. He does not argue that any federal or state constitutional provision would require such a nexus, and we find no constitutional issue which might justify this Court's intervention in the legislative process.

¶ 9 This Court reviews analogous precedent as we analyze this issue of first impression. In *Anderson* we parsed the initial version of the "stand your ground" law (then known as the "make my day" law), which did not contain the explicit provision exempting persons who used deadly defensive force while engaged in unlawful activity. We found that the term "occupant" includes any person lawfully inside a dwelling, without regard to any possessory or privacy interest. Anderson,1998 OK CR 67, ¶ 13, 972 P.2d at 36 We noted that "this statute applies to the 'good guys' as well as the 'bad guys.'" *Id.* at ¶ 12, 972 P.2d at 36. The Legislature subsequently amended the law to include the provisions exempting persons engaged in unlawful activity. 21 O.S.Supp.2006. § 1289.25(C)(3), (D).

¶ 10 Taking the provisions of the statute together, it appears that the Legislature intended to allow Oklahoma citizens the right of defense in furtherance of their expectation of absolute safety in places they have a right to be, unless the citizens are engaging in unlawful activity at the time. 21 O.S.Supp.

2006, § 1289.25(A),(C)(3), (D). The statute neither specifies a type of unlawful activity nor requires that it be connected to the use of defensive force. That is, the statute contains no nexus requirement. This Court should not interpret the statute to require a nexus where such a requirement is neither included nor necessary to effect the Legislature's intent. We recently reached a similar conclusion based on expansive statutory language in *State v. Ceasar,* 2010 OK CR 15, 237 P.3d 792. Construing the misdemeanor manslaughter statute, we found that the statute does not distinguish among types or categories of misdemeanor offenses that may be used as predicate offenses for misdemeanor manslaughter. *Ceasar,* 2010 OK CR 15, ¶ 7, 237 P.3d at 794. In the same way, the Legislature failed to distinguish among types or categories of unlawful activity that would prevent a citizen from claiming justification for deadly force under the "stand your ground" law. The Legislature has the power to do so. This Court should not attempt to create such distinctions.

¶ 11 In reaching this conclusion, this Court finds that the Legislature intended the "stand your ground" provisions to protect regular, law-abiding citizens from intruders bent on criminal activity. We therefore conclude that the Legislature's intent was to exclude from the benefit of this statute persons who are actively committing a crime, not persons who have or may have committed a crime in the past. Examples of current crimes include, but are not limited to, use of an illegal weapon in commission of the homicide, possession of illegal drugs on the premises, or an ongoing assault by the defendant against another person in the residence. We further find that the Legislature did not intend to prohibit use of the right of defense to persons who may have committed minor infractions of the law. Examples of such infractions include, but are not limited to, persons who are illegally parked or have outdated vehicle registration, have outstanding warrants for minor offenses, or are in arrears with child support payments. We give these examples as a guide to trial courts in exercising their discretion, and are confident that this interpretation of the law implements the Legislature's stated intent.

*Anderson,* 1998 OK CR 67, ¶ 3, 972 P.2d at 33.

■ ¶ 12 Dawkins argues that this Court recognizes a nexus requirement for the crimes of felony murder and possession of a firearm during the commission of a felony. Felony murder relieves prosecutors of the burden to show malice, by transferring a defendant's intent to commit a felony to the commission of murder. *Wade v. State,* 1978 OK CR 77, ¶ 3, 581 P.2d 914, 915–16. To give effect to this legislative intention, we require a nexus between the felony and the victim's death. *Malaske v. State,* 2004 OK CR 18, ¶ 5, 89 P.3d 1116, 1118; Wade at ¶ 4, 916. The nexus requirement for possession of a firearm during the commission of a felony follows from the statutory language prohibiting possession of specified weapons "in such commission or attempt". 21 O.S.Supp.2007 § 1287; *Pebworth v. State,* 1993 OK CR 28, ¶ 10, 855 P.2d 605, 606. In both these circumstances, the nexus is inherent in the definition of the crime.

¶ 13 This is not the case with the "stand your ground" law. That is a legislative exception to the criminal code, allowing the use of defensive deadly force under certain circumstances clearly set forth in the statute. Neither the plain language of the statute nor the intent of the Legislature, as best we can discern it from the text and circumstances, requires this Court to create a requirement not contained within the statute itself. Dawkins was engaged in illegal activity and not entitled to benefit from the provisions of the "stand your ground" law.

■ ¶ 14 We find in Proposition II that, as the "stand your ground" law does not apply to Dawkins's case, any possible error in instruction is harmless. 20 O.S.2001, § 3001.1.

■ ¶ 15 We find in Proposition III that Dawkins requested the uniform jury instructions on self-defense given by the trial court. A defendant may not invite error by complaining after the trial court gives his proposed instructions. *Hogan v. State,* 2006 OK CR 19, ¶ 45, 139 P.3d 907, 925. In addition, the instructions accurately stated the applicable law, and the trial court did not abuse its discretion in instructing jurors on

self-defense. *Spence v. State,* 2008 OK CR 4, ¶ 8, 177 P.3d 582, 584. We further find that the prosecutor did not improperly argue the law based on these instructions. Dawkins claimed self-defense; whether he or Sanford was the aggressor was a question for the jury. Both sides have wide latitude to argue the evidence and inferences from it. *Bell v. State,* 2007 OK CR 43, ¶ 6, 172 P.3d 622, 624. The argument, to which Dawkins did not object, was based on the evidence and there is no plain error.

■ ¶ 16 We find in Proposition IV that Dawkins raised self-defense, but he neither testified nor explained his departure from the scene, and the flight instruction should not have been given. *Hancock v. State,* 2007 OK CR 9, ¶ 104, 155 P.3d 796, 820; *Jones v. State,* 2006 OK CR 5, ¶ 43, 128 P.3d 521, 539; *Mitchell v. State,* 1993 OK CR 56, ¶ ¶ 7–11, 876 P.2d 682, 684–85. Under the circumstances of this case the error does not require relief. Jurors considered and rejected Dawkins's claim of self-defense; they considered and rejected the State's allegation that Dawkins shot Sanford with malice. Jurors concluded that Dawkins committed manslaughter. The record does not support a conclusion that the erroneous flight instruction could have changed "in any way the jury's fundamental determination of guilt". *Hammon v. State,* 1995 OK CR 33, ¶ 103, 898 P.2d 1287, 1309.

■ ¶ 17 We find in Proposition V that comments in the State's closing argument do not require relief. Dawkins failed to object to any of these comments at trial and we review for plain error. The prosecutor ought not to have argued that "the presumption of innocence is not something for guilty men to hide behind" and "that shield of innocence should be removed from [Dawkins]." This Court has found that very similar comments were reversible because they denied a defendant a constitutional right by misstating the presumption of innocence. *Miller v. State,* 1992 OK CR 77, ¶ ¶ 3–5, 843 P.2d 389, 390. We have refused to grant relief where this argument could not have affected the verdict. *Torres v. State,* 1998 OK CR 40, ¶ 47, 962 P.2d 3, 17–18; *Hamil-*

*ton v. State,* 1997 OK CR 14, ¶ 34, 937 P.2d 1001, 1009–10. The record does not support a conclusion that this argument affected the verdict.

¶ 18 Dawkins did not testify. The record suggests the prosecutor intended to argue that Dawkins explained his actions in his own words, that jurors heard these words through other witnesses, and that Dawkins's explanations were not consistent with his trial claim of self-defense. This would have been proper argument. However, in making it the prosecutor told jurors "He did testify." A prosecutor should not comment on a defendant's decision not to testify. 22 O.S.2001, § 701. This Court has found that similar statements may not amount to reversible error depending on the circumstances of the case. *Byrne v. State,* 1980 OK CR 109, ¶ 31, 620 P.2d 1328, 1334. Defense counsel told jurors Dawkins would testify, he did not, and defense counsel discussed this in closing. By the time the prosecutor used her unfortunate phrasing, Dawkins's failure to testify had already been called to the jurors' attention. Dawkins was convicted of a lesser included offense. Under the circumstances of this case, the comments do not rise to the level of plain error and no relief is necessary.

¶ 19 The remaining allegations in Proposition V do not rise to the level of plain error. The comment regarding Dawkins's statements did not shift the burden of proof. Dawkins was required to present evidence of self-defense, through his own or the State's witnesses; only then does the State have the burden to prove beyond a reasonable doubt that the defendant was not acting in self-defense. *Perez v. State,* 1990 OK CR 67, ¶ 8, 798 P.2d 639, 641. The prosecutor never argued that Dawkins had any obligation to tell others he acted in self-defense. Instead, she argued that Dawkins had made statements to other people that were not consistent with his claim of self-defense. As we determined in Proposition I that the "stand your ground" law does not apply in this case, any claim of error based on argument relating to this law is moot. The prosecutor did not mislead jurors regarding the "reasonable person" standard used in the self-defense instructions. Rather than attempting to de-

fine the term, the prosecutor argued that Dawkins was not a reasonable person. The prosecutor argued facts not in evidence by stating that a witness referred to Dawkins's weapon as a "killing machine." That phrase is not in the trial record. However, Dawkins fails to show that he was prejudiced by this extra-record remark. Without prejudice, there is no plain error. 20 O.S.2001. § 3001.1.

¶ 20 We find in Proposition VI that counsel was not ineffective. Dawkins must show both that counsel's performance was deficient and that he was prejudiced by counsel's deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We review counsel's performance against an objective standard of reasonableness under prevailing professional norms, and we will not second-guess strategic decisions. *Harris v. State,* 2007 OK CR 28, ¶ 29, 164 P.3d 1103, 1114–15; *Rompilla v. Beard,* 545 U.S. 374, 380–81, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005). If we find that Dawkins has not shown prejudice we need not reach the claim of deficient performance. *Williams v. Taylor,* 529 U.S. 362, 393, 120 S.Ct. 1495, 1513, 146 L.Ed.2d 389 (2000) (defendant prejudiced where counsel's actions deny him a substantive or procedural right to which he is entitled by law); *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

¶ 21 Dawkins fails to show he was prejudiced by counsel's failure to object to instructions and argument. We found in Proposition II that, as the "stand your ground" law does not apply in Dawkins's case, any possible error in the instruction on that law was harmless. Counsel cannot be ineffective for failing to object to the form of an instruction on law that was not relevant to Dawkins's case. We found in Proposition V that the prosecutor improperly referred to the presumption of innocence and commented on Dawkins's failure to testify. However, we determined that these comments did not affect the verdict and do not warrant relief. As the improper comments did not affect the outcome of the trial, Dawkins cannot show he was prejudiced by counsel's failure to object.

¶ 22 We find in Proposition VII that the accumulation of error does not require reversal. We found in Proposition IV that the trial court erred in instructing jurors on flight. We found in Proposition V that improper prosecutorial remarks did not affect the verdict and do not require relief. We found no other error. Where a trial has been fairly conducted, cumulative errors do not require relief. *Brumfield v. State,* 2007 OK CR 10, ¶ 37, 155 P.3d 826, 840.

## DECISION

¶ 23 The Judgment and Sentence of the District Court of Hughes County is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

C. JOHNSON, P.J., A. JOHNSON, V.P.J., LUMPKIN and LEWIS, JJ., concur.