1998 OK CR 67

**STATE of Oklahoma, Appellant**

v.

**Aubrey Ivan ANDERSON, Appellee,**

**No. S–97–1641.**

Court of Criminal Appeals of Oklahoma.

Dec. 9, 1998.

Allen Smith, Norman, OK, Amicus Curiae, Oklahoma Criminal Defense Lawyers' Association.

Cathy Stocker, District Attorney, E.A. Gates, Assistant District Attorney, Kingfisher, OK, for Appellant.

## *OPINION*

LUMPKIN, Judge:

¶ 1   Appellee, Aubrey Ivan Anderson, was charged with Murder in the First Degree (Count I) (21 O.S.1991, § 701.7) and Shooting with Intent to Kill (Count II) (21 O.S.1991, § 652), in the District Court of Garfield County, Case No. CF–96–169.   Prior to trial, Appellee filed a Motion to Quash the Information based in part, upon the State's interpretation of 21 O.S.1991, § 1289.25.  The State requested the trial court render judgment on the applicability of the statute.  The Honorable Richard M. Perry, Associate District Judge, denied the motion to quash, ruling that Appellee, although only a visitor in the residence, qualified as an "occupant" under Section 1289.25.  A jury trial was subsequently commenced.  At the close of evidence, the jury was given Oklahoma Uniform Jury Instruction–Criminal, (OUJI–CR) (2nd) 8–15 setting forth the affirmative defense provided in Section 1289.25.  The State objected to the instruction and reserved the issues pertaining to the application of Section 1289.25.  The jury subsequently returned not guilty verdicts on all charges.  Pursuant to 22 O.S.1991, § 1053(3) the State has reserved, as a question of law, the issue of whether the term "occupant" as used in Section 1289.25 can include people other than the home owner or continuous resident of the premises.

¶ 2   Initially, we note that a state appeal on a reserved question of law does not address any part of the trial or proceedings except the precise legal issue reserved. *State v. Harp*, 457 P.2d 800, 805 (Okl.Cr. 1969).

If we should undertake to determine the applicability of the law to a given set of facts, we would constantly be engaged in a re-trial of every case involving an acquittal. This, in the Court's opinion, was not the purpose of giving the State the right to appeal upon a Reserved Question of Law.

*Id.* Therefore, the only facts from Appellee's trial that now concern us are that he was an invited guest in the home of Joe Alvey and Chris Wilson; that the victims, Joe Younger and Chris Harris, forcibly broke into Alvey and Wilson's home, and that Appellee shot the victims.

¶ 3   Whether the term "occupant" as used in 21 O.S.1991, § 1289.25 includes people other than the home owner or continuous resident of the premises presents an issue of first impression for this Court.  As we answer this question, we must keep in mind the fundamental rule of statutory construction—to ascertain and give effect to the intention of the Legislature as expressed in the statute. *Thomas v. State*, 404 P.2d 71, 73 (Okl.Cr.1965).  To ascertain the intention of the Legislature in the enactment of a statute, the court may look to each part of the same, to other statutes upon the same or relative subjects, to the evils and mischiefs to be remedied, and to the natural or absurd consequences of any particular interpretation. *Id.* See also *Lozoya v. State*, 932 P.2d 22, 29 (Okl.Cr.1996).  A statute should be given a construction according to the fair import of its words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. *Wallace v. State*, 910 P.2d 1084, 1086 (Okl.Cr.1996).  It is the text of the statute which gives notice to the citizen of the prohibited conduct subject to prosecution and the scope of conduct which is allowable to defend against prohibited conduct committed against a person. Therefore, the text of the statute should guide this Court's interpretation of it.

¶ 4   Title 21 O.S.1991, § 1289.25, also known as the "Make My Day" Law, provides:

A.   The Legislature hereby recognizes that the citizens of the State of Oklahoma have a right to expect absolute safety within their own homes.

B.   **Any occupant** of a dwelling is justified in using any degree of physical force, including but not limited to deadly force, against another person who has made an unlawful entry into that dwelling, and when **the occupant** has a reasonable belief that such other person might use any

physical force, no matter how slight, against **any occupant** of the dwelling.

C. **Any occupant** of a dwelling using physical force, including but not limited to deadly force, pursuant to the provisions of subsection B of this section, shall have an affirmative defense in any criminal prosecution for an offense arising from the reasonable use of such force and shall be immune from any civil liability for injuries or death resulting from the reasonable use of such force.

D. The provisions of this section and the provisions of the Oklahoma Self–Defense Act, Sections 1 through 25 of this act, shall not be construed to require any person using a pistol pursuant to the provisions of this section to be licensed in any manner (emphasis added).

¶ 5 This statute does not contain a list of definitions. Lacking a specific statutory definition, we must look to the common ordinary meaning of the term "occupant." 25 O.S. 1991, § 1. *Webster's II* defines "occupant" as "1. One that occupies a place or position, esp. a resident. 2. One who is the first to take possession of previously unowned land or premises." *Webster's II New Riverside University Dictionary*, (1984). The State argues that under these definitions, and those of "occupancy" and "occupy," section 1289.25 refers only to a person who has a possessory or privacy interest in the premises. While we find these definitions instructive, we do not find they answer the questions before us.

¶ 6 Looking to other statutory uses of the term "occupant," we do not find a requirement for a possessory or privacy interest. *See* 21 O.S.1991, § 1171 (peeping tom is any person who loiters in the vicinity of a private dwelling with the intent to gaze upon occupants therein in a clandestine manner); 21 O.S.1991, § 1438(B) (malicious mischief is the breaking and entering of a dwelling without permission of the owner or occupant thereof); 47 O.S.1991, §§ 10–111; 11–507; 11–705; 11–1110 (references to occupants of vehicles.) The use of the term "occupied" similarly

implies no possessory interest. See 21 O.S. 1991, § 1401 (first degree arson committed by willful burning of any building or structure, inhabited or occupied by one or more persons).

¶ 7 Appellant directs us to the Colorado "Make My Day" law, 8B C.R.S., § 18–1–704.5 (1986), after which Section 1289.25 was patterned. Much of the Oklahoma statute is the same as the Colorado law, including the preamble and the use of the term "occupant." Appellant cites to several cases in which the Colorado courts had held the term "occupant" is synonymous with "homeowner." However, a review of those cases reveals the Colorado courts have not been presented with the question we now have before us and therefore have not addressed whether "occupant" includes a visitor to the home.[1] Likewise, other jurisdictions cited to us by Appellant have not addressed the question before us.[2] Appellant is correct in noting these jurisdictions permit the homeowner to use deadly force within his own residence, but the issue of whether a visitor is similarly permitted to use deadly force is not addressed.

¶ 8 While dictionary definitions, statutory references and case law from Oklahoma and other jurisdictions are helpful in our analysis, the interpretation of the Legislature's intent in Section 1289.25 is ultimately based upon the words in the statute itself. Reading the statute in its entirety, we find it a study in contradiction or compromise. The preamble seems to clearly set forth the intent of the law—"that the citizens of the State of Oklahoma have a right to expect absolute safety within their own homes." However, the terms "resident," "homeowner" or other such restrictive terms were not used in the remainder of the statute. Likewise, the all encompassing term "any person" was not used. Therefore, we are left with the term "occupant," a term with no specific statutory definition. That term is used three times in subsection B. It is the third use of the term "occupant" which leads us to the

---

1. *People v. McNeese,* 892 P.2d 304 (Colo.1995); *People v. Malczewski,* 744 P.2d 62 (Colo.1987); *People v. Guenther,* 740 P.2d 971 (Colo.1987).

2. *State v. Clifton,* 880 S.W.2d 737, 743 (Tenn.Cr. App.1994); *People v. Owen,* 226 Cal.App.3d 996, 277 Cal.Rptr. 341, 347 (Cal.App. 5 Dist.1991); N.J.Stat.Ann., §§ 2C:3–4, –6 (West 1997).

conclusion that the law was intended to protect anyone legally inside the dwelling, and not just the legal residents of the dwelling. Reading the statute in that manner, any person legally in the dwelling is justified in using any degree of physical force, including but not limited to deadly force, against another person who has made an unlawful entry into that dwelling, and when the person legally inside the dwelling has a reasonable belief that such other person might use any physical force, no matter how slight, against any person legally in the dwelling. To read it in any other manner would permit only residents or homeowners to protect only other residents or homeowners. Invited guests or employees would be left to fend for themselves. This type of application would lead to many absurd results and is not supported by any statements of legislative intent. There are many fact situations which illustrate this point, but we will look at just two.

¶ 9 The baby-sitter comes to the homeowner's residence to watch the children while the parents (the homeowners) are away. If someone breaks into the house making an unlawful entry, is the babysitter allowed to protect herself and the children in her care? Under the State's interpretation of the statute, the baby-sitter would not be able to use any physical force, including deadly force, against the intruder because she was not the homeowner or resident. We do not believe the Legislature intended to exclude someone in that position from using physical or deadly force to protect him or herself and those in his or her charge. Another scenario involves that of the invited guest. An unlawful entry is made into the home, the homeowners or residents are either away from the house or unable to defend themselves and only the invited guest is able to muster a defense. Is the invited guest allowed to use any physical force, including deadly force, against the intruder? We think so. Under the State's interpretation of the statute, the invited guest would not be able to so defend him or herself. While these are just two of many situations which could arise, they adequately illustrate the practical application of the statute. These situations also point out how our interpretation of the statute is consistent with the other laws on self-defense and defense of another.

¶ 10 The Oklahoma statutes addressing self-defense, defense of others, defense of habitation, and defense of property are numerous and often confusing and inconsistent. However, one common aspect is shared. Exoneration is dependent on facts which an innocent defender may not know or be able to know until it is too late, and legal conclusions about those facts which the lay person cannot be expected to make, particularly when one is facing an attacker or unknown intruder. For example, under 21 O.S.1991, § 733(1) and (2), if the attacker's intent is felonious or there is reasonable grounds to fear great personal injury, the innocent persons inside the dwelling have a right to use deadly force.[3] Under 21 O.S.1991, § 643(3) force may be used by a party about to be injured in order to prevent the commission of an offense, but the amount of force is limited to that sufficient to prevent such offense.[4] Whether the intruder intends a felony or not may depend on facts that the victim may not know until it is too late. Under Section 1289.25, the person inside the dwelling does not have to determine the intruder's inten-

---

3. 21 O.S.1991, § 733, justifiable homicide by any person, provides in pertinent part:

> Homicide is also justifiable when committed by any person in either of the following cases:
> 1. When resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person is; or,
> 2. When committed in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant, when there is a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished; or,

4. 21 O.S.1991, § 643(3) provides in pertinent part:

> To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases:
> 3. When committed either by the party about to be injured, or by any other person in his aid or defense, in preventing or attempting to prevent an offense against his person, or any trespass or other unlawful interference with real or personal property in his lawful possession; provided the force or violence used is not more than sufficient to prevent such offense.

tions. An unlawful entry and the reasonable belief that the intruder might use any physical force is sufficient to permit the person inside the dwelling to use any physical force, including deadly force, against the person making the unlawful entry. Under Section 1289.25, persons legally inside. a dwelling have the right to expect safety and freedom from unlawful intrusion. With the enactment of Section 1289.25 it appears the Legislature was trying to create a place of absolute safety and freedom—the home, whether it be your own home or one in which you are legally present.

¶ 11 The State's argument that including visitors in the term "occupant" will result in some sort of carnage is groundless. The statute has been on the books for approximately a decade without incident. It contains sufficient safeguards to prevent abuse. Under the statute, if the occupant does not "reasonably believe" that the intruder intends to use force, then he or she is not justified in using deadly force. 21 O.S.1991, § 1289.25(B). This statute merely tells those who would break into other people's homes that they do so at their own risk. When one is going about his or her business, in the safety of a dwelling, and is suddenly surprised by an intruder breaking into the dwelling, we find the Legislature intended to give the benefit of the doubt to the law-abiding occupant rather than the law breaking intruder. When one intrudes into a dwelling that is not his, the extent of his wrongdoing should not depend on the legal relationship between the dwelling and those lawfully inside it. When one intrudes into the dwelling of another, the harm is the violation of the sanctity of the dwelling itself, not merely to a particular person's property interest. An invited guest in a dwelling has just a much right to expect safety therein as the owner.

¶ 12 Granted, as with many of our laws, this statute applies to the "good guys" as well as the "bad guys." While the persons legally inside the residence may be engaged in illegal activity, or may have occupations which are illegal, if they are legally inside the residence and an intruder illegally enters the dwelling, they are entitled to use any physi-

cal force, including deadly force, against the intruder. Whether the use of this force exonerates them from the result of the use of that force, i.e., murder, shooting with intent to kill, etc. would be for a jury to decide under the appropriate instructions.

¶ 13 Therefore, we find the Legislature intended for the term "occupant" as used in 21 O.S.1991, § 1289.25 to include visitors, i.e. persons legally inside the dwelling.

¶ 14 In its second proposition of error, the State contends that OUJI–CR (2nd) 8–15 omits the element of requiring the force used against the intruder to be reasonable. The uniform instruction reads as follows:

A/An resident/tenant/occupant of a house/apartment/dwelling is justified in using physical force, including deadly force, against another person who has unlawfully entered the house/apartment/dwelling if the resident/tenant/occupant reasonably believes that the other person might use any physical force, no matter how slight, against any resident/tenant/occupant of the house/apartment/dwelling.

¶ 15 The instruction given in the present case was this instruction verbatim, with the trial court using the term "occupant" instead of resident or tenant and the term "dwelling" instead of house or apartment. The State seeks to amend the instruction to include an additional requirement that the use of force by the occupant must be reasonable under the circumstances. In support of its argument, the State relies on subsection C of Section 1289.25 which provides:

C. Any occupant of a dwelling using physical force, including but not limited to deadly force, pursuant to the provisions of subsection B of this section, shall have an affirmative defense in any criminal prosecution for an offense arising from the **reasonable use of such force** and shall be immune from any civil liability for injuries or death resulting from the reasonable use of such force (emphasis added).

¶ 16 We reject the State's argument and find OUJI–CR (2nd) 8–15 is an appropriate statement of the law. The uniform instruction is taken directly from subsection B of the statute. When the statute is read as a

whole and in its entirety, the only "reasonableness" test set forth is that the occupant "reasonably believes" the intruder might use any force. The statute does not state, as in 21 O.S.1991, § 643(3), that the use of the force must be reasonable under the circumstances. To the contrary, it appears the intent of Section 1289.25 was to remove any "reasonable under the circumstances" test and permit the force used against the intruder based solely upon the occupant's belief that the intruder might use any force against the occupant. The Legislature specifically did not limit the amount of force the occupant could use against the intruder. The reference in subsection C to reasonable force does not create a "reasonable under the circumstances" test. It merely describes when an accused may claim the defense set out in subsection B. The use of the word "reasonable" in subsection C corresponds to the use of the term "reasonably" in subsection B. The only "reasonableness" prerequisite to claiming the affirmative defense set forth in section 1289.25 is set out in subsection B, *i.e.*, that the occupant reasonably believes the intruder might use some force, however slight, against the occupant. Accordingly, we find OUJI–CR (2nd) 8–15 is a correct statement of the law as set forth in 21 O.S.1991, § 1289.25 and that no additional requirement of "reasonableness" need be included in the instruction.

¶17 RESERVED QUESTION OF LAW ANSWERED

CHAPEL, P.J., dissents.

STRUBHAR, V.P.J., recuses.

LANE, J., and JOHNSON, J., concur.

CHAPEL, P.J., DISSENTING:

¶1 I dissent. Title 21 O.S.1991, § 1289.25, often referred to as the "Make My Day" Law, provides in Subsection A that it is intended to protect citizens "within their own home." I would therefore limit the application of the Act. In view of Subsection A, I am of the opinion that the word "occupant" which appears in Subsections B and C refers only to residents of a dwelling and no others.