2005 OK CR 9

Donald Wayne VILANDRE, Appellant

v.

STATE of Oklahoma, Appellee.

No. F–2004–236.

Court of Criminal Appeals of Oklahoma.

May 24, 2005.

Kenneth E. Wright, III, Wright & Wright, Miami, OK, attorney for Defendant at trial.

John Kelson, Assistant District Attorney, Jay, OK, attorney for State at trial.

Thomas Purcell, Appellate Defense Counsel, Norman, OK, attorney for Petitioner on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, William R. Holmes, Assistant Attorney General, Oklahoma City, OK, attorneys for Respondent on appeal.

## SUMMARY OPINION

CHAPEL, Presiding Judge:

¶1 Donald Wayne Vilandre was tried by jury and convicted of Manufacturing Methamphetamine in violation of 63 O.S.2001, § 2–401, in the District Court of Delaware County, Case No. CF–2003–160. In accordance with the jury's recommendation the Honorable Robert G. Haney sentenced Vilandre to twenty (20) years imprisonment and a fine of $50,000. Vilandre appeals from this Judgment and Sentence.

¶ 2 Vilandre raises five propositions of error in support of his appeal:

I. The trial court erred when it failed to dismiss the charges against Vilandre, where the State illegally destroyed the evidence prior to trial;

II. Because the State proved no more than that Vilandre may have been guilty as an accessory after the fact, the conviction for manufacturing methamphetamine must be reversed;

III. Vilandre was deprived of a fair trial when one of the State's witnesses introduced prejudicial other crimes and hearsay evidence;

IV. The sentence imposed is excessive; and

V. The trial court erred in denying Appellant's motion to suppress the fruits of the search of the house.

¶ 3 After thorough consideration of the entire record before us on appeal, including the original record, transcripts, exhibits and briefs, we find that neither reversal nor modification is required by the law and evidence. We find in Proposition II that sufficient evidence supported Vilandre's conviction for manufacture of methamphetamine.[1] We find in Proposition III that the officer's reference to an anonymous tip was neither hearsay nor other crimes evidence.[2] We further find that the improper reference to a previous encounter with Vilandre was cured when the trial court sustained his objection and admonished the jury.[3] We find in Proposition IV that Vilandre's sentence is not excessive.[4] We find on Proposition V that the warrantless entry was justified by the exigent circumstance of destruction of evidence.[5]

¶ 4 We discuss Proposition I more fully. The Legislature has enacted apparently conflicting statutes regarding preservation of evidence in drug cases. The Oklahoma Uniform Controlled Substances Act provides that all controlled dangerous substances, raw materials, products and equipment for manufacturing CDS shall be forfeited (§ 2–503) and destroyed (§ 2–508).[6] On the other hand, the Act also provides that an officer seizing the exact same material subject to forfeiture in § 2–503 must make a written inventory and maintain custody of that material until all legal actions are exhausted.[7] Further, the Act provides that all hazardous materials and property contaminated with them, within § 2–503, must be submitted to the OSBI for "prompt destruction."[8] Section 2–508(A) provides that the OSBI shall

1. Evidence showed knowing and intentional production, preparation, etc., of a controlled dangerous substance through extraction and synthesis, and showed Vilandre's dominion and control over the substances. *White v. State*, 1995 OK CR 15, 900 P.2d 982, 986–87 (attempt to move drugs shows dominion and control); OUJI–CR (2nd) 6–3; 63 O.S.2001, § 2–401(G); OUJI–CR (2nd) 6–16; 63 O.S.2001, § 2–101(19).

2. This was not offered to prove the truth of the matter asserted, and thus not hearsay. 12 O.S. 2001, § 2801. It was not other crimes evidence because it referred to the crime with which Vilandre was charged.

3. *Welch v. State*, 2000 OK CR 8, 2 P.3d 356, 369–70, *cert. denied*, 531 U.S. 1056, 121 S.Ct. 665, 148 L.Ed.2d 567.

4. *Rea v. State*, 2001 OK CR 28, 34 P.3d 148, 149. Vilandre's sentence was not so disproportionate as to be excessive. *Rea*, 34 P.3d at 150. (Chapel, J., concurring in part and dissenting in part).

5. *See, e.g., Harjo v. State*, 1994 OK CR 47, 882 P.2d 1067, 1074, *cert. denied*, 514 U.S. 1131, 115 S.Ct. 2007, 131 L.Ed.2d 1007 (1995); *Blackburn v. State*, 1978 OK CR 24, 575 P.2d 638, 642 (exceptions to warrant requirement include escape of suspect or destruction of evidence); *U.S. v. Banks*, 540 U.S. 31, 36, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003). The *Coffey v. State*, 2004 OK CR 30, 99 P.3d 249, public safety exigent circumstances exception in Oklahoma for warrantless entry into methamphetamine labs, does not control in this case. There was no evidence the entry was prompted by officers' awareness of the volatile and explosive nature of the chemicals they smelled and the potential danger to the public, or of the possibility that persons in the area might be in danger from the chemicals.

6. 63 O.S.2001, § 2–503(A) (forfeiture); 63 O.S.Supp.2004, § 2–508 (destruction).

7. 63 O.S.Supp.2004, § 2–507.

8. 63 O.S.Supp.2004, § 2–505(B). Destruction is carried out or supervised by the OSBI. Section 2–503(D) directs that all raw materials used or intended for use in manufacturing controlled dangerous substances shall be forfeited pursuant to § 505.

have discretion, prior to destruction, to preserve samples of the substance for testing when the amount of the controlled dangerous substance is less than ten (10) pounds.[9]

¶ 5 A defendant has a constitutional right to examine the evidence which will be used against him at trial.[10] To enforce this right, the State, and its law enforcement representatives, must provide a defendant the opportunity to examine that evidence, preserving sample evidence for testing where appropriate. The statutory provisions above must be read in tandem with this basic right. Taken as a whole, the statutory language indicates the Legislature's intent to protect the rights of defendants to examine evidence before trial, as well as the right of the public to be safe from hazardous materials. In interpreting the apparently conflicting statutory language, we attempt to avoid any construction which will render any part of the Act superfluous or useless.[11] Balancing the defendant's right to prepare for trial with the imperative of public safety, the Legislature has created a hierarchy whereby evidence shall be destroyed in accordance with its hazardous nature. Thus, property seized under the Act which is merely connected to controlled dangerous substances (e.g. real property or cash) is subject to forfeiture and sale or destruction only after legal proceedings are concluded. Controlled dangerous substances and the materials used to manufacture them are subject to immediate forfeiture and submission to the OSBI for eventual destruction. The OSBI has discretion to preserve samples of this property before destruction if the amount of controlled dangerous substance is less than ten pounds, and may, within certain limits, destroy this material before legal proceedings are finished.[12]

Hazardous materials and contaminated property seized under the Act must be summarily forfeited and submitted to the OSBI for prompt destruction. Again, the OSBI may preserve—and should do so, to preserve a defendant's right to examine the evidence against him—a sample of the controlled dangerous substance itself for testing before destruction. In fact, a procedure as set forth by the Legislature in Section 2–508(B), when the amount of controlled dangerous substance exceeds ten pounds, should be adopted in a properly modified format to ensure a defendant's constitutional right to examine evidence is uniformly preserved throughout the state. This interpretation of the provisions on destruction of evidence gives effect to the intention of the Legislature as expressed in the statutes.[13] As the statutes do not conflict, we turn to the question of which statutory provisions controlled the seizure of property in this case.

¶ 6 The property seized here, and used in evidence against Vilandre, consists entirely of hazardous or contaminated materials used in the manufacture of methamphetamine. All the property seized was thus subject to prompt destruction under § 2–505(B). Vilandre claims he had a statutory right to examine and test the evidence, which was violated when most of the glassware, liquids, bottles, etc., from the scene were destroyed. Vilandre bases this claim on § 2–508(B), which provides that seized or surrendered controlled dangerous substances which weigh over ten pounds may be destroyed without a court order before trial, while photographs and representative samples are kept, and the defendant has notice and a chance to examine and test the evidence.[14] The record does not indicate that the meth-

9. 63 O.S.Supp.2004, § 2–508(A).

10. U.S. Const. amend. V, VI, XIV; Ok. Const. art. II, §§ 7, 20.

11. *Byrd v. Caswell*, 2001 OK CR 29, 34 P.3d 647, 648–49; *Reupert v. State*, 1997 OK CR 65, 947 P.2d 198, 201;

12. The Oklahoma Legislature has provided a very specific methodology for preserving and testing of seized evidence when the amount of controlled dangerous substance seized is greater

than ten pounds within the provisions of 63 O.S.2001, § 2–508(B). This statutory procedure ensures constitutional compliance.

13. *State v. Young*, 1999 OK CR 14, 989 P.2d 949, 955.

14. 63 O.S.Supp.2004, § 2–508(B). "All other property" which comes into possession of the OSBI narcotics bureau or a D.A. may be disposed of by court order when it is no longer needed in connection with litigation. 63 O.S.Supp.2004, § 2–508(C).

amphetamine in this case exceeded ten pounds in weight. In fact, the record strongly suggests that the controlled dangerous substances which were seized here consisted of precursors and methamphetamine in the manufacturing stage, in liquid form. Even if these materials did exceed ten pounds, Vilandre's argument fails. This statutory provision applies only to the controlled dangerous substance itself, not to contaminated property or paraphernalia used in its manufacture. Vilandre's complaint goes primarily to destruction of glassware and other objects which might have been tested for fingerprints. These items are not subject to the notice and testing requirements of § 2–508(B). While these items may fall under a constitutional right to examine evidence, Vilandre had no "right to examine and test the evidence" under this statute.[15]

¶ 7 Section 2–505(B) requires law enforcement agencies to turn hazardous materials evidence over to the OSBI for destruction. The OSBI requires officers to fill out a standard form swearing under oath that legal proceedings have been exhausted with respect to the items submitted for destruction. This form is used even where hazardous evidence is submitted for destruction before trial. This requirement apparently is designed to ensure compliance with the various statutes above. However, when applied to hazardous and contaminated materials slated for prompt destruction under § 2–505, it may be inaccurate. Those items are forfeited upon seizure. The requirement of submission for prompt destruction means, as a practical matter, that local law enforcement must often submit hazardous items found in methamphetamine labs to the OSBI for destruction before legal proceedings have concluded. The offending clause is not necessary to fulfill the statutory requirements upon law enforcement in these cases. This Court encourages the OSBI to develop a separate affidavit for use when hazardous and contaminated materials are submitted for prompt destruction, which does not state that legal proceedings have been concluded. This will fulfill the statutory requirements with respect to these materials and preserve law enforcement officers from the risk of signing a possibly inaccurate oath.

■ ¶ 8 Destruction of evidence will only require relief where the destruction is the result of bad faith by the State.[16] Vilandre complains that the destruction affidavit form required the officer to lie under oath, since legal proceedings were not over at the time the evidence in this case was submitted for destruction. He suggests that systematic bad faith is proved by the evidence showing that the agent routinely used this form, and signed it, although legal proceedings had not concluded. He argues that the violation of State law (requiring preservation of evidence until legal proceedings are over), plus the untrue affidavit, should prove the State was acting in bad faith. We conclude above that no violation of state law occurred, as the law requires prompt destruction of evidence of this type. The record does not support any other claim suggesting the State acted in bad faith in destroying this evidence pursuant to the requirements of § 2–505. This proposition is denied.

### Decision

¶ 9 The Judgment and Sentence of the District Court is **AFFIRMED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App.2004, the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LUMPKIN, V.P.J., C. JOHNSON and A. JOHNSON, JJ., concur.

---

**15.** Vilandre had a constitutional right to examine the evidence used to convict him, and he had the opportunity to examine the liquid methamphetamine components admitted into evidence. The destruction of the containers holding the liquid methamphetamine components may have violated this right. However, any such violation was harmless based on the weight of the evidence supporting Vilandre's conviction.

**16.** *Torres v. State,* 1998 OK CR 40, 962 P.2d 3, 13, *cert. denied,* 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999); *Hogan v. State,* 1994 OK CR 41, 877 P.2d 1157, 1161, *cert. denied,* 513 U.S. 1174, 115 S.Ct. 1154, 130 L.Ed.2d 1111 (1995) (adopting *Youngblood* standard); *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).