· 2008 OK CR 13

**Tilmon KING, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2007–665.

Court of Criminal Appeals of Oklahoma.

April 4, 2008.

Doug Parr, Oklahoma City, OK, attorney for defendant/petitioner at trial and on appeal.

Paul Hesse, Molly Neuman, Assistant District Attorneys, El Reno, OK, attorneys for state at trial.

W.A. Drew Edmondson, Attorney General of Oklahoma, Donald D. Self, Assistant Attorney General, Oklahoma City, OK, attorneys for respondent on appeal.

### OPINION

CHAPEL, Judge.

¶ 1 Tilmon King was tried by judge and convicted of Trafficking in Controlled Dangerous Substance (Marijuana) in violation of 63 O.S.2001, § 2–415, in the District Court of Canadian County, Case No. CF–2005–485.[1] The Honorable Edward C. Cunningham sentenced King to six (6) years imprisonment and a $25,000 fine, with the fine suspended.

---

1. This Court granted an appeal out of time on June 20, 2007.

King appeals from this conviction and sentence and raises one proposition of error in support of his appeal.

¶2 On September 26, 2005, at approximately 12:50 p.m., Agent Ronnie Jackson of the Oklahoma Bureau of Narcotics and Dangerous Drugs (OBNDD) stopped King on I–40 for following too closely. He wrote King a warning and asked to search the car. When King refused consent to search his rental car, Jackson called OBNDD Agent Lane to bring his drug dog and sniff the car. After the dog alerted, the OBNDD agents searched the car and found 161 pounds of marijuana. Before the stop, Agent Jackson was assigned to "highway interdiction" duties and was sitting stationary in the center median of I–40 monitoring eastbound traffic. According to the stipulation of facts, Jackson's duties entailed monitoring interstate highways in Oklahoma in order to interdict criminal activity. When Jackson first saw King's car it was not breaking any traffic laws. Jackson followed the car because it was a rental car with out-of-state plates. He watched the car until King committed a traffic violation, then pulled him over. Jackson had been patrolling interstate highways for the OBNDD since April 2005.

¶3 In his single proposition of error, King claims the trial court erred in denying his motion to quash his arrest, suppress the evidence, and dismiss the charges, because the Oklahoma Bureau of Narcotics and Dangerous Drug Control agent who made the traffic stop in his case did not have the statutory authority to enforce the traffic laws of the State of Oklahoma. Agent Jackson works for the Bureau of Narcotics and Dangerous Drugs Control. King claims, as he did below, that OBNDD agents have no statutory authorization to conduct traffic interdiction—that is, they can't make traffic stops. Therefore, he argues, his stop was illegal and the evidence in his case should have been suppressed. Both parties agree that a law enforcement officer cannot make an arrest outside his jurisdiction.[2] The only issue is whether OBNDD agents have general or limited jurisdiction. This is a question of first impression. Neither party cites any cases from this or any other jurisdiction finding that an OBNDD agent has the authority to enforce traffic laws.

¶4 The State suggests without authority that we must decide whether the trial court abused its discretion in denying King's motion to suppress the evidence. As King notes, this is not the correct standard of review in this case. While we review findings of fact under an abuse of discretion standard, we review questions of law de novo.[3] The issue before the trial court, and presented on appeal, is purely an issue of law, and we conduct a *de novo* review.

¶5 The Oklahoma Bureau of Narcotics and Dangerous Drugs Control was established by statute within the Uniform Controlled Dangerous Substances Act (the Act).[4] The statute concerning OBNDD agents' authority states both: "Agents appointed by the Director shall have the powers of peace officers generally",[5] and "Agents appointed pursuant to the provisions of this section shall have the responsibility of investigating alleged violations and shall have the authority to arrest those suspected of having violated the provisions of the Uniform Controlled Dangerous Substances Act." [6] The Act provides:

Any peace officer may: (1) Carry firearms; (2) Execute search warrants, arrest warrants, subpoenas, and summonses issued under the authority of this state; (3) Make an arrest without warrant of any person the officer has probable cause for believing has committed any felony under the Uniform Controlled Dangerous Substances Act or a violation of Section 2–402 of this title; (4) Make seizures of property pursuant to the provisions of the Uniform Controlled Dangerous Substances Act; and (5) Perform such other lawful duties as are

2. *United States v. Sawyer*, 2004 OK CR 22, 92 P.3d 707, 709; *Phipps v. State*, 1992 OK CR 32, 841 P.2d 591, 593.

3. *Gomez v. State*, 2007 OK CR 33, 168 P.3d 1139, 1141–42; *Seabolt v. State*, 2006 OK CR 50, 152 P.3d 235, 237.

4. 63 O.S.2001, § 2–102.

5. 63 O.S.2001, § 2–103(B)(1).

6. 63 O.S.2001, § 2–103(C).

required to carry out the provisions of the Uniform Controlled Dangerous Substances Act.[7]

¶6 King's position is that the two specific references to the duties of law enforcement officers under the Controlled Dangerous Substances Act control the scope of law enforcement authority in connection with the Act. King argues that, as OBNDD agents are entirely authorized under the Act, their authority is limited to the provisions of §§ 2–103(C) and 2–501. King argues that this language neither explicitly nor implicitly authorizes OBNDD agents to conduct traffic stops. The State essentially responds that the specific statutory language in these two sections is not controlling, relying on the provision in § 2–103(B)(1) that OBNDD agents have the power of peace officers generally. The State argues that this designation means there can be no limits or restrictions on the law enforcement authority of OBNDD agents. The State also relies on the word "may", and the phrase "other lawful duties as required to carry out the provisions of this act" in § 2–501.

¶7 We are bound by principles of statutory interpretation. In interpreting these statutory provisions we must avoid any construction which would make any part of the statutes superfluous or useless.[8] We should be guided by the text of the statutes.[9] In order to give effect to the Legislature's expressed intentions we construe statutes using the plain and ordinary meaning of their language.[10] A specific statute controls over a general one.[11] Where possible, this Court will interpret conflicting statutory language to reconcile the provisions, make them consistent and give each provision effect.[12] If the Legislature designs a statute for a specific situation, we should give effect to that intent.[13] To determine legislative intent we may look to each part of the statute, similar statutes, the evils to be remedied, and the consequences of any particular interpretation.[14]

¶8 Applying these principles, we conclude that the specific language controlling law enforcement authority under the Controlled Dangerous Substances Act determines this issue. We first see whether we can discern the Legislature's intent, to which we must give effect. In authorizing the OBNDD, the Legislature intended to create a specific statewide law enforcement agency with the primary responsibility of enforcing the provisions of the Act. This explanation for the creation of the OBNDD ensures that the OBNDD is not a mere duplicate of other statewide and local law enforcement agencies. Any other interpretation would render either the OBNDD, or other law enforcement agencies, superfluous.

¶9 The Controlled Dangerous Substances Act refers generally to OBNDD agents as peace officers. However, the Act goes on to specify the type of law enforcement authority a peace officer possesses when acting under the aegis of the Controlled Substances Act, as OBNDD agents do. General references to peace officers are found, not in Title 63, but in the Codes covering crimes and criminal procedure, Titles 21 and 22. In *Canady v. Reynolds* we declined to find judicial authority to review Department of Corrections earned credits decisions without specific statutory authority. In concluding there was

7.   63 O.S.Supp.2004, § 2–501.

8.   *State v. District Court of Oklahoma County, The Hon. D. Fred Doak,* 2007 OK CR 3, 154 P.3d 84, 87; *Vilandre v. State,* 2005 OK CR 9, 113 P.3d 893, 896; *State v. Love,* 2004 OK CR 11, 85 P.3d 849, 850.

9.   *State v. Anderson,* 1998 OK CR 67, 972 P.2d 32, 33.

10.  *Howrey v. State,* 2002 OK CR 22, 46 P.3d 1282, 1284; *Byrd v. Caswell,* 2001 OK CR 29, 34 P.3d 647, 648–49; *Anderson,* 972 P.2d at 33.

11.  *State v. Franks,* 2006 OK CR 31, 140 P.3d 557, *Kolberg v. State,* 1996 OK CR 41, 925 P.2d 66,

68; *Canady v. Reynolds,* 1994 OK CR 54, 880 P.2d 391, 400 n. 7; *Bowman v. State,* 1990 OK CR 19, 789 P.2d 631, 632

12.  *Vilandre,* 113 P.3d at 896; *Delfrate v. Department of Corrections,* 1999 OK CR 42, 991 P.2d 549, 552; *Lozoya v. State,* 1996 OK CR 55, 932 P.2d 22, 28–29; *State v. Ramsey,* 1993 OK CR 54, 868 P.2d 709, 711.

13.  *Lozoya,* 932 P.2d at 29.

14.  *Howrey,* 46 P.3d at 1284; *Lozoya,* 932 P.2d at 29.

none, we noted that the sole specific statute dealing with administrative remedies was in the statute on earned credits.[15] We found that this specific placement controlled over the general statutes granting judicial authority. This supports a conclusion that the specific placement of authority for OBNDD agents within the Controlled Dangerous Substances Act controls over general peace officer provisions in other statutes.

¶ 10 The Act details, in very specific language, the duties and authority of officers enforcing its provisions. The final clause, allowing lawful duties as required to carry out the purposes of the Act, must be read in the context of the Act as a whole. That is, the duties must relate to the offenses enumerated within the Act. The State suggests that this Court has held otherwise. The State argues that *State v. Stuart*[16] held the list of duties and authority in § 2–503 is not exclusive and can thus encompass traffic enforcement. The plain language of *Stuart* does not support this interpretation. In *Stuart* we found that a local police officer acted outside his jurisdiction in arranging and monitoring a controlled narcotics buy outside his city limits. However, we noted that in making the buy the officer was acting within the scope of authority permitted under § 2–503, the catch-all section involving "other lawful duties as required".[17] Interpreting that provision in light of the Act as a whole we found that making a controlled buy was certainly among the duties contemplated in enforcing the Controlled Dangerous Substances Act. *Stuart* supports our conclusion that the final provision of § 2–503 refers to offenses within the Act.

¶ 11 We now look to the offenses in the Controlled Dangerous Substances Act. Among the prohibited actions is transporting a controlled substance with the intent to distribute.[18] Vehicles used to transport drugs are subject to forfeiture.[19] Logic dictates that, in order to enforce the provision prohibiting transportation of drugs, OBNDD agents must have the ability to legally inter-

act with those vehicles. One primary method by which law enforcement officers interact with vehicles is by enforcing traffic laws. On the specific facts before us, we find that OBNDD agents have the authority, under the specific language of the Act, to make traffic stops connected with their enforcement of that Act. To conclude otherwise would render meaningless the portion of the Act prohibiting transportation of drugs.

¶ 12 Agent Jackson had the authority to make the traffic stop which formed the basis for the subsequent search and King's arrest. The trial court did not err in denying King's motion to suppress the evidence.

### Decision

¶ 13 The Judgment and Sentence of the District Court is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2008), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, V.P.J., A. JOHNSON, J., and LEWIS, J.: concur.

LUMPKIN, P.J.: concur in results.

**15.** *Canady,* 880 P.2d at 400 n. 7.

**16.** 1993 OK CR 29, 855 P.2d 1070.

**17.** *Stuart,* 855 P.2d at 1073.

**18.** 63 O.S.Supp.2005, § 2–401(A).

**19.** 63 O.S.Supp.2005, § 2–503(A)(4).