2009 OK CR 22

**The STATE of Oklahoma, Appellant**

**v.**

**Candice Marie CROWLEY & Lindsay Anne Hall, Appellees.**

**Nos. S–2008–109, S–2008–110.**

Court of Criminal Appeals of Oklahoma.

July 24, 2009.

William R. Higgins, Claremore, OK, attorney for Defendants at trial and appeal.

Gene Haynes, District Attorney, Sean McConnell, Assistant District Attorney, Claremore, OK, Attorneys for State at trial and appeal.

## OPINION

CHAPEL, Judge.

¶1 Candice Marie Crowley and Lindsay Anne Hall were charged with Furnishing Alcoholic Beverages to Minors in violation of 37 O.S.2001, § 537(A)(1), in the District Court of Rogers County, Case Nos. CF–06–69 and CF–06–73.[1] After a joint Preliminary Hearing Crowley and Hall were bound over for trial. They filed a Motion to Suppress and Brief in Support, the State responded, and a hearing was held on March 15, 2007. By written Order filed January 18, 2008, the Honorable J. Dwayne Steidley sustained the Motion to Suppress and the charges against Crowley and Hall were dismissed. The State appeals.[2]

¶2 Highway Patrol Trooper McMillan was asked by the Catoosa Campus Police to go to a house located in the City of Catoosa and investigate a report of underage drinking. He drove by the house, heard loud music, saw several parked cars, and saw two women of indeterminate age sitting on the porch holding cups. At that point he had observed no crimes in progress. McMillan asked the Catoosa Campus Police for help. Campus Police officers and Rogers County Sheriff's Department deputies joined him at the house. Through the windows the officers saw at least one juvenile drinking from an opaque cup, and saw open bottles of liquor in the house. McMillan ultimately made initial entry into the house. Crowley and Hall were arrested.

¶3 Crowley and Hall claimed that Trooper McMillan had no authority or jurisdiction to investigate these crimes or arrest them, while the State argues on appeal that McMillan did have that authority. This is an issue of first impression. The jurisdiction of Oklahoma Highway Patrol troopers is governed by 47 O.S.Supp.2005, § 2–117. The first,

more general, section of this statute designates Highway Patrol troopers as peace officers, vests in them the powers of search and seizure, and to investigate and prevent crime and enforce the criminal laws of Oklahoma.[3] The second section enumerates twenty-two specific duties troopers are authorized to perform. Among them is the power "to arrest without writ, rule, order or process any person detected by them in the act of violating any law of the state."[4] The Attorney General, asked to interpret the authority granted troopers under this statute, concluded that it provides limited authority for troopers to initiate criminal investigations, and that they may initiate general criminal investigations at the request of another law enforcement authority which would have the power to conduct the investigation itself.[5]

¶4 The Attorney General Opinion, which is not binding on this Court, fails to take into account the § 2–117(B)(2) language quoted above. This language appears to authorize Oklahoma Highway Patrol troopers to arrest persons committing crimes they themselves witness. When faced with conflicting general and specific statutory language we will, if possible, reconcile the provisions to give them each effect.[6] In keeping with this principle, the specific provisions of § 2–117(B)(2) must control over the general authorization of responsibility described in § 2–117(A). The specific language of § 2–117(B)(2) authorizes Oklahoma Highway Patrol troopers to arrest persons they see committing crimes, even if those crimes are general in nature and not confined to enforcement of the laws relating to the operation and use of vehicles on the state highway system.

¶5 However, the plain language of the statute does not confer the authority to initiate investigation into crimes a trooper has not yet witnessed. There is a significant

---

1. These appeals were filed separately. As the claim of error, facts and circumstances are the same, and Crowley and Hall are represented by the same counsel, the cases have been combined on appeal.

2. 22 O.S.2001, § 1089.1.

3. 47 O.S.Supp.2005, § 2–117(A).

4. 47 O.S.Supp.2005, § 2–117(B)(2).

5. *Question Submitted by: Director DeWade Langley, Oklahoma State Bureau of Investigation,* 2006 OK AG 14, ¶ 11 (April 21, 2006).

6. *King v. State,* 2008 OK CR 13, 182 P.3d 842, 844.

difference between the power to arrest and the power to investigate crimes. The Legislature was clearly aware of this distinction. The language of § 2–117 reflects this, granting troopers power to investigate some specific crimes and enforce others. Had the Legislature wished in § 2–117(B)(2) to authorize troopers to investigate crimes, it could have done so explicitly, as it did in other provisions of the statute. As it did not, we conclude that the Legislature did not intend to confer on Oklahoma Highway Patrol troopers the broad power to investigate any crime.

¶ 6 The Attorney General concluded that a trooper could initiate a criminal investigation at the request of another law enforcement agency with the jurisdiction to investigate the crime in question.[7] We agree. However, the trial court found and there seems to be no dispute that the Catoosa Campus Police Department had no interdepartmental agreement for assistance with the Oklahoma Highway Patrol. The trial court also found that, under the terms of agreement between the City of Catoosa and the Catoosa Campus Police, the latter had no jurisdiction over the location. That conclusion is the only reasonable interpretation of the agreement's language. That being the case, this Court agrees with the trial court's conclusion that the Catoosa Campus Police had no authority to investigate this criminal activity to begin with, and had no authority to ask Trooper McMillan to investigate it for them. Consequently Trooper McMillan could not rely on the request from the Campus Police for authority to initiate this criminal investigation.

¶ 7 Trooper McMillan had no authority to initiate an investigation in this case. He began investigating a report of a crime long before he saw anything to indicate that a crime might be occurring; he could not confirm that teenagers were drinking alcohol at the party until officers entered the house. This is significantly beyond the scope of any powers authorized under § 2–117(B)(2).

¶ 8 The trial court's decision to suppress the information Trooper McMillan gave the Catoosa Campus Police was correct. Trooper McMillan was not authorized under the Highway Patrol statute to investigate this type of crime. The Catoosa Campus Police had no interdepartmental agreement for assistance with the Oklahoma Highway Patrol, and had no authority to investigate the crime themselves. One might argue that, given McMillan's prior knowledge of the area and the information from the Catoosa Campus Police, he had probable cause to believe a crime was in progress. That is irrelevant to the legal question of whether Trooper McMillan had the authority to act on that information and investigate a possible crime. He did not.

¶ 9 We do not hold by this Opinion that a Highway Patrol Trooper may never have jurisdiction to investigate crimes under similar circumstances. We hold that, under the legislation as it currently stands, troopers do not have that authority. The Legislature has the power to grant such authority by statute. We hold that, in the absence of a statutory grant of authority, Trooper McMillan did not have the authority to investigate the crimes charged under the circumstances of this case.

### Decision

¶ 10 The ruling of the District Court sustaining the Defendants' Motion to Suppress is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2009), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, P.J., and LEWIS, J., concur.

A. JOHNSON, V.P.J., and LUMPKIN, J., dissent.

LUMPKIN, Judge, Dissent.

¶ 1 I dissent to the sustaining of the Defendant's Motion to Suppress. As pointed out in the majority opinion, 47 O.S.Supp. 2005, § 2–117 sets out the powers and duties

---

**7.** Question Submitted by: Director DeWade *Langley, Oklahoma State Bureau of Investigation,*

2006 OK AG 14, ¶ 11 (April 21, 2006).

of the Oklahoma Highway Patrol and this Court has no reported cases on the authority of a Highway Patrol Trooper to initiate a criminal investigation and arrest any person believed to be violating a law of the state. However, I disagree with the majority's interpretation of the language in § 2–117.[1] The verbal gymnastics utilized to reach the desired result defy basic logic and common sense based on the statutory language which controls. It is a well established principle of statutory construction that statutes are to be construed according to the plain and ordinary meaning of their language. *King v. State,* 2008 OK CR 13, ¶ 7, 182 P.3d 842, 844; *State v. Young,* 1999 OK CR 14, ¶ 27, 989 P.2d 949, 955. "A statute should be given a construction according to the fair import of its words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." *Howrey v. State,* 2002 OK CR 22, ¶ 8, 46 P.3d 1282, 1284 citing *State v. Anderson,* 1998 OK CR 67, ¶ 3, 972 P.2d 32, 33. Statutes are to be construed to determine the intent of the Legislature, reconciling provisions, rendering them consistent and giving intelligent effect to each. *Young,* 1999 OK CR 14, ¶ 27, 989 P.2d at 955. The fundamental principle of statutory construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute. *Id.*[2]

¶ 2 Applying these principles, a plain, common sense reading of the statute shows that Highway Patrol Troopers are "peace officers" of the State of Oklahoma and "have the powers and authority . . . vested by law in other peace officers, including the right and power of search and seizure, . . . and the right and power to investigate and prevent crime and to enforce the criminal laws of this state."[3] The authority of Highway Patrol Troopers extends to the power "to arrest without writ, rule, order or process any person detected by them in the act of violating any law of the state." 47 O.S.Supp.2005, § 2–117(B)(2)

¶ 3 In *King v. State,* 2008 OK CR 13, 182 P.3d 842 this Court recently ruled that agents of the Oklahoma Bureau of Narcotics and Dangerous Drugs have the statutory authority to make traffic stops as required to carry out the purposes of the Uniform Dangerous Substances Act, 63 O.S.2001, § 2–101. Applying the basic principles of statutory construction, this Court found that the specific language of the Uniform Dangerous Substances Act set out the duties and authorities of the agents in enforcing its provisions. Applying those same principles discussed in

---

1. Title 47 O.S.Supp.2005, § 2–117 provides in pertinent part:

   A. The Commissioner of Public Safety and each officer of the Department of Public Safety, as designated and commissioned by the Commissioner, are hereby declared to be peace officers of the State of Oklahoma and shall be so deemed and taken in all courts having jurisdiction of offenses against the laws of the state. Such officers shall have the powers and authority now and hereafter vested by law in other peace officers, including the right and power of search and seizure, except the serving or execution of civil process, **and the right and power to investigate and prevent crime and to enforce the criminal laws of this state.**

   B. **The officers of the Department shall have the following authority, responsibilities, powers and duties:**
   1. To enforce the provisions of this title and any other law regulating the operation of vehicles or the use of the highways, including, but not limited to, the Motor Carriers Act of this state, or any other laws of this state by the direction of the Governor;

   **2. To arrest without writ, rule, order or process any person detected by them in the act of violating any law of the state;**
   3. When the officer is in pursuit of a violator or suspected violator and is unable to arrest such violator or suspected violator within the limits of the jurisdiction of the Oklahoma Highway Patrol Division, to continue in pursuit of such violator or suspected violator into whatever part of the state may be reasonably necessary to effect the apprehension and arrest of the same, and to arrest such violator or suspected violator wherever the violator may be overtaken;

   . . . .

   (emphasis added)(omitted).

2. The Court relies on an Attorney General's opinion, 2006 OK AG 14, ¶ 11 (April 21, 2006), however the Attorney General's opinion does not even mention the specific grant of authority in 47 O.S.Supp.2005, § 2–117(B)(2).

3. "The term 'peace officer' means any sheriff, police officer, federal law enforcement officer, or any other law enforcement officer whose duty it is to enforce and preserve the public peace." 21 O.S.2001, § 99.

*King* to the present case, the specific language of 47 O.S.Supp.2005, § 2–117(A) and (B)(2) clearly authorized Trooper McMillan's actions.

¶ 4 I also disagree with the majority's conclusion that because the Catoosa Campus Police Department had no interdepartmental agreement for assistance with the Oklahoma Highway Patrol, Trooper McMillan could not rely on a request from the Campus Police for authority to initiate the investigation and therefore the trooper acted beyond his jurisdiction. Even if the Campus Police was limited to asking only the Catoosa Police Department for assistance and had no specified authority to ask the Oklahoma Highway Patrol for assistance based on its agreement with the Catoosa Public Schools, there is no reason to completely throw out the information received from the Campus Police by Trooper McMillan. The information received from the Campus Police is the same as that received from a known informant. Trooper McMillan testified he received information from the Campus Police that an underage drinking party was in process at the Crowley residence. McMillan testified he was familiar with the residence having received previous call-ins about underage drinking parties occurring at the residence. In addition, he observed an individual he knew to be a juvenile in the kitchen drinking from one of the Styrofoam cups being used by the group, together with beer cans and liquor bottles in plain view. This information was sufficient to provide the Trooper with probable cause that a crime was in progress. *Mollett v. State,* 1997 OK CR 28, ¶ 14, 939 P.2d 1, 7 ("[t]he existence of probable cause is a common sense standard requiring facts sufficient to warrant a man of reasonable caution in the belief that an offense has or is being committed"). *See also United States v. Mikell,* 102 F.3d 470, 475 (11th Cir.1996) ("[p]robable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be discovered in a particular place"). Therefore, pursuant to his authority as a peace officer of the state and his statutory right and power to investigate and prevent crime and to enforce the criminal laws of this state, Trooper McMillan had the legal authority to initiate the investigation into the report of an underage drinking party at the defendant's home. However, based on the majority opinion analysis, Trooper McMillen would not have had the authority to act even if the information reported to him was that a woman was being assaulted at that very moment because he is not empowered to initiate an investigation based on third party information. That does not seem logical to me, nor does it seem to be the intent of the Legislature. Even a private citizen has the power to act in that situation. *See* 22 O.S.2001, § 202. So, why doesn't a Highway Patrol Trooper? This decision is certainly hard to harmonize with our recent decision in *State v. Kieffer–Roden,* 2009 OK CR 18, 208 P.3d 471, where we held that a sheriff's failure to comply with 19 O.S.Supp.2005, § 548, in the appointment of his deputies did not deprive them of the ability to make a citizen's arrest under § 202.

¶ 5 Based upon the above, the ruling of the trial court sustaining the defendants' motion to suppress should be reversed and the case remanded to the District Court for further proceedings.

¶ 6 I am authorized to state that Judge Arlene Johnson joins in this writing.