OSCN Found Document:Questions Submitted by: The Honorable Mark Mann, Oklahoma State Senate, District 46

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

Questions Submitted by: The Honorable Mark Mann, Oklahoma State Senate, District 462025 OK AG 11Decided: 08/27/2025OKLAHOMA ATTORNEY GENERAL OPINIONS
Cite as: 2025 OK AG 11, __ __

¶0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following questions:

1. Based on title 47, section 2-117 of the Oklahoma Statutes, which state agency is responsible for patrolling and responding to incidents on Oklahoma's National System of Interstate and Defense Highways ("Interstates")?

2. If the answer to question one is the Oklahoma Highway Patrol ("OHP"), does the Department of Public Safety ("Department" or "DPS") have authority to discontinue OHP's patrol and incident response on Interstates in certain areas of Oklahoma?

3. If the answer to question two is no, does article VI, section 8 of the Oklahoma Constitution, which requires the Governor to "cause the laws of the State to be faithfully executed," compel the Governor to direct OHP to continue its enforcement responsibilities referenced above?

I.Summary
¶1 This Opinion addresses only OHP's duties and responsibilities with respect to Interstates in Oklahoma. Nothing in this Opinion should be construed to apply to OHP's duties and responsibilities on state highways. 1

¶2 Title 47, section 2-117(D)(2) provides that OHP "shall have primary law enforcement authority respecting traffic-related offenses" on Oklahoma's Interstates, 2 while county sheriffs, municipal police departments, and other peace officers also have law enforcement authority on Interstates. OHP's "primary law enforcement authority" under section 2-117(D)(2) is a mandatory duty that cannot be abdicated or abandoned in favor of other law enforcement agencies. As such, the Governor, as DPS's chief officer, must ensure that OHP fulfills its statutory duty as the "primary law enforcement authority" by exercising its jurisdiction over all Interstates. For the reasons explained below, this office need not reach the constitutional question regarding the Governor's duty under article VI, section 8 of the Oklahoma Constitution.
II.Background
A. DPS Announcement

¶3 On July 3, 2025, DPS announced its intent to "shift its valuable resources out of" Oklahoma City, Edmond, Moore, Norman, Midwest City, Del City, and Tulsa effective November 1, 2025. 3 As a result, OHP "will entrust responsibility for all" Interstates within these city limits to the respective municipal law enforcement agencies. 4 In a press conference two weeks after the announcement, DPS Commissioner Tim Tipton reiterated the need to focus OHP's patrol operations on rural Oklahoma to meet the steady increase in calls for service in those areas. 5 In short, your questions ask whether this reallocation of OHP resources from Oklahoma's two major metropolitan areas to rural Oklahoma is lawful.

B. OHP's Enabling Act

¶4 Created in 1937 as a division of DPS, OHP's powers and duties were "subordinate to and no way a limitation on the powers and duties of sheriffs or other peace officers of the State or any political subdivision thereof." House Bill 26, 1937 Okla. Sess. Laws ch. 50, art. 4, § 16(2). 6 This legislation also required OHP to "cooperate with sheriffs and police officers in enforcing all laws of the State of Oklahoma . . . ." Id. § 17. True enough, Oklahoma Interstates were not yet constructed in 1937, and they all did not become fully operational until 1985 when I-44 through Oklahoma City opened. 7

¶5 Then, in 1961, the Legislature adopted the Uniform Vehicle Code, which re-created DPS and OHP. House Bill 556, 1961 Okla. Sess. Laws tit. 47, ch. 10b, pp. 315--423. Additionally, the 1961 enactment of title 47, section 2-117 of the Oklahoma Statutes removed language making OHP "subordinate" to sheriffs and other peace officers. Compare 47 O.S.1961, § 2-117with 1937 Okla. Sess. Laws ch. 50, art. 4, § 16(2). Instead, OHP was to simply "cooperate with sheriffs and police officers in enforcing the laws regulating the operation of vehicles and the use of highways[.]" See 1961 Okla. Sess. Laws tit. 47, ch. 10b, § 2-118(a). In 1982, the Legislature again amended OHP's jurisdiction, stating for the first time that the OHP "shall have primary law enforcement authority respecting traffic related offenses upon the National System of Interstate and Defense Highways." House Bill 1617, 1982 Okla. Sess. Laws ch. 16, § 1. The same language now appears in section 2-117(D)(2). 8 Furthermore, section 2-117(B)(10) also gives the DPS, or OHP, the "authority, responsibilit[y], power[], and dut[y]" to "investigate and report traffic collisions on all [Interstates] and on all highways outside of incorporated municipalities, and may investigate traffic collisions within any incorporated municipality upon request of the local law enforcement agency." 9 And title 47, section 2-118 of the Oklahoma Statutes directs the Commissioner to "require the [OHP to] properly patrol the highways of this state." Together, these statutory provisions form the basis of the DPS's and OHP's jurisdiction on the Interstates.

¶6 At bottom, this opinion turns on (1) the meaning of "primary" in the context of "primary law enforcement authority," and (2) whether section 2-117(D)(2) is merely a power or, rather, a mandatory duty.

III.Discussion
¶7 To be sure, this office has no reason to doubt that there is an increased need for more resources in rural Oklahoma to ensure the coverage and service Oklahomans expect from OHP. More to the point, this office concludes that the OHP's "primary law enforcement authority respecting traffic-related offenses" on Oklahoma's Interstates is a mandatory duty that cannot be abdicated to the detriment of local law enforcement, either in urban or rural areas. First, the definition of "primary" within the context of section 2-117 complements the longstanding construction of the word "shall" in statute. Second, the Legislature demonstrated its intent by using the word "shall," evidencing a legislative directive.

A. Title 47, Section 2-117 of the Oklahoma Statutes requires OHP to be the lead law enforcement authority for traffic offenses on Interstates.

¶8 In its first 45 years--from 1937 to 1982--OHP did not have any "primary" responsibility. As detailed above, the 1982 amendment to section 2-117 fundamentally changed OHP's enforcement responsibilities. It no longer played second fiddle to sheriffs and other law enforcement officers on Interstates. In 1982, section 1 of House Bill 1617 amended title 47, section 2-117 to read, "The powers and duties conferred on the members of the Oklahoma Highway Patrol shall not limit the powers and duties of sheriffs or other peace officers . . . provided however, . . . the Oklahoma Highway Patrol Division shall have primary law enforcement authority respecting traffic-related offenses upon the [Interstates]." 10 (Emphasis added).

¶9 Under Oklahoma law, the "cardinal rule of statutory construction is to ascertain and give effect to the legislative intent and purpose as expressed by the statutory language." BS&B Safety Sys., L.L.C. v. Edgerton, 2023 OK 89Brown v. Claims Mgmt. Res. Inc., 2017 OK 13391 P.3d 111

¶10 While the Legislature did not define the word "primary," the plain meaning11 of "primary" is "of first rank, importance, or value: principal." Primary, Merriam-Webster.com (last updated July 26, 2025), https://www.merriam-webster.com/dictionary/primary. As a result, OHP's law enforcement authority under section 2-117(D)(2) relating to traffic offenses on Interstates is principal to and ranks above all others, including sheriffs, municipal police departments, and other peace officers in the State. Put another way, such officers must give way to OHP's "primary law enforcement authority" regarding traffic offenses on Interstates.

¶11 The Legislature has used the phrase "primary law enforcement authority" in one other statute. Title 74, section 1811.4C(A) of the Oklahoma Statutes provides, "[DPS] shall be the primary law enforcement authority within the State Capitol Park and within the State Capitol Complex." As is the case in title 47, section 2-117, "primary law enforcement authority" is undefined in section 1811.4C. Even though both provisions share the same language, DPS has not indicated its intent to reallocate resources away from the Park and Complex and allow other law enforcement agencies to assume responsibility for law enforcement over the Park and Complex. And it should not. Just like DPS (OHP) has primary authority within the Park and Complex, OHP has the same primary authority on Interstates. The bottom line is that the same phrase cannot have two different meanings.

B. The Commissioner and OHP must serve as the primary law enforcement authority regarding traffic offenses on Interstates and possess reasonable discretion while implementing such duty.

¶12 Cases before the Oklahoma Supreme Court about state agency authority often rest on whether an agency or agency head has a mandatory duty or if it possesses a power with which it may exercise some degree of discretion. Here, OHP "shall have primary law enforcement authority respecting traffic-related offenses" on Interstates. 47 O.S.2021, § 2-117Thurston v. State Farm Mut. Auto. Ins. Co., 2020 OK 105478 P.3d 415Indep. Sch. Dist. # 52 of Oklahoma Cnty. v. Hofmeister, 2020 OK 56473 P.3d 475

¶13 Nothing in section 2-117 indicates that OHP has discretion to choose whether it will patrol Interstates. Indeed, it has "primary law enforcement authority" for traffic offenses on all of the Interstate system in Oklahoma. Consequently, section 2-117(D)(2)'s legislative mandate prevents DPS from ceasing OHP's primary enforcement authority on Interstates as described in the Department's July 2025 press release and subsequent press conference.

¶14 Furthermore, section 2-117(B)(10)'s language also supports this conclusion for two reasons. First, the relevant language in section 2-117(B)(10) comprises two clauses in the following order: (1) "To investigate and report traffic collisions on all [Interstates] and on all highways outside of incorporated municipalities," and (2) "may investigate traffic collisions within any incorporated municipality upon request of the local law enforcement agency." (Emphasis added). As noted previously, "may" notes permission or discretion. Hofmeister, ¶ 35, 473 P.3d at 491. The preceding clause setting forth OHP's "authority, responsibilities, powers, and duties" on Interstates leaves no room for permission or discretion. 47 O.S.2021, § 2-117principal duty to investigate and report traffic collisions on Interstates.

¶15 Second, the prepositional phrase "outside of incorporated municipalities" only modifies the second instance of the word "highways." "Outside incorporated municipalities" only applies to the "second" highways because it appears at the tail end of the initial clause in section 2-117(B)(10), which makes that second instance of highways the nearest-reasonable referent. 12 Thus, OHP's duty to be the primary law enforcement authority on Interstates extends to all parts of Interstates--inside and outside of incorporated municipalities.

¶16 Still, section 2-117(D)(2) cannot be construed in such way that interferes with the Commissioner and OHP exercising necessary discretion to best execute OHP's "primary law enforcement authority." Put simply, it is not a matter of if the Commissioner and OHP reallocate resources; it is how they do it. The press release indicated that "OHP will continue refining [the] plan for Troop realignment as the November 1, 2025 transition approaches." 13 This office cannot speculate on a plan not yet finalized or implemented. The office can, however, state that any reallocation resulting in an abdication or abandonment of OHP's statutory responsibility is impermissible under Oklahoma law. Taken together, sections 2-117(B)(10) and (D)(2) leave no doubt that the Legislature intended OHP to be the lead law enforcement agency on all Interstates. In order to lead on Interstates, OHP must be present.

C. As DPS's chief officer, the Governor must ensure that DPS fulfills its statutory command under section 2-117(D)(2).

¶17 This office resolves your third and final question by applying Oklahoma statute in lieu of article VI, section 8 of the Oklahoma Constitution. Whether the Governor "cause[s] the laws of the State to be faithfully executed" ultimately turns on factfinding, which is outside the scope of an Attorney General Opinion. See 74 O.S.2021, § 18bsee also 2025 OK AG 3Brown, 2017 OK 13

¶18 The Governor is the chief officer of DPS. 47 O.S.2021, § 2-101Id. Additionally, title 47, section 2-108 states:

The Commissioner is hereby vested with the power and is charged with the duty of observing, administering, and enforcing the provisions of this title and all laws regulating the operation of vehicles or the use of the highways, the enforcement and administration of which are now or hereafter vested in the Department.

¶19 By statute, the Governor has power to ensure that the Commissioner operates and administers DPS as required by law, including the Commissioner's duties under section 2-108. As a result, the Governor must oversee the Commissioner in his or her operation and administration of the DPS and OHP, including its legal duty under section 2-117(D)(2) to act as the "primary law enforcement authority" on Interstates. 14

¶20 It is, therefore, the official Opinion of the Attorney General that:

1. Title 47, section 2-117(D)(2) of the Oklahoma Statutes requires the OHP to exercise "primary law enforcement responsibility" for traffic related offenses on interstate and defense highways in Oklahoma. While sheriffs, municipal police departments, and other peace officers have authority over traffic offenses under section 2-117(D)(1), such authority is supplemental to the OHP's primary authority.

2. DPS may not cause OHP to abandon or abdicate its "primary law enforcement authority" on Interstates. That said, the Commissioner and OHP possess discretion to execute the implementation of the primary law enforcement authority on Interstates. Determining whether any particular Troop reallocation constitutes abdication or abandonment of OHP's duty as the primary law enforcement authority is a fact question outside the scope of an official Attorney General Opinion. See 74 O.S.2021, § 18b

3. Considering title 47, section 2-101(b) of the Oklahoma Statutes, the office need not address the constitutional duties of the Governor in this opinion. By virtue of office, the Governor also serves as the DPS's "chief officer." Consequently, the Governor must ensure that the Commissioner oversees and administers the Department and OHP in the performance of its duty as the primary law enforcement authority on Interstates in accordance with section 2-117(D)(2).

Gentner DrummondAttorney General of Oklahoma

Thomas R. SchneiderDeputy General Counsel

FOOTNOTES

1 For analysis about OHP's duties and responsibilities on state highways, see 2006 OK AG 14

2 Oklahoma's Interstates are a part of the larger "Interstate System," or the Dwight D. Eisenhower National System of Interstate and Defense Highways, as set forth in 23 U.S.C. §§ 101(a)(12) & 103(c).

3 Press Release, Oklahoma Department of Public Safety, Oklahoma Highway Patrol Resource Allocation (July 3, 2025) (on file with author).

4 See supra footnote 3.

5 Tim Tipton, Commissioner, Oklahoma Department of Public Safety, Press Conference about OHP Resource Allocation (July 17, 2025), https://www.facebook.com/share/v/19RgMRVnrJ/.

6 See also History, Oklahoma Department of Public Safety (last modified Jan. 8, 2025), https://oklahoma.gov/dps/programs-services/ohp/history.html.

7 Diana Everett, Highways, The Encyc. of Okla. Hist. and Culture (Jan. 15, 2010), https://www.okhistory.org/publications/enc/entry?entry=HI004.

8 Section 2-117 is essentially OHP's jurisdictional statute. State v. Crowley, 2009 OK CR 22215 P.3d 99See 2025 Okla. Sess. Laws ch. 197, § 2. Senate Bill 375 did not amend any provisions relevant in this Opinion.

9 Section 2-117(B)(10)'s current language originates from a 2004 amendment, which required OHP to investigate and report traffic collisions on all Interstates and state highways outside of municipalities. 2004 Okla. Sess. Laws ch. 418, § 6.

10 Today, section 2-117(D)'s substantive language remains the same, but the lead-in slightly differs: "Except as provided in this subsection . . . ." Nonetheless, this office would reach the same answer regardless of whether it construed the 1982 version or the current version of section 2-117.

11 "Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained." 25 O.S.2021, § 1

12 See Nearest-Reasonable-Referent Canon ("When the syntax involves something other than a paralleled series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent."). Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 152-53 (2012).

13 See supra footnote 3.

14 This office's opinions are binding upon state officials affected by them, and they must follow and not disregard those opinions. 74 O.S.2021, § 18bState ex rel. York v. Turpen, 1984 OK 26681 P.2d 763Indep. Sch. Dist. No. 12 of Okla. Cnty. v. State ex rel. State Bd. of Educ., 2024 OK 39565 P.3d 23Hendrick v. Walters, 1993 OK 162865 P.2d 1232

The Oklahoma Supreme Court
2100 N. Lincoln Blvd., Suite 1
Oklahoma City, OK 73105